MORRISON & QUINN, INC., Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Fourth Department, March 14, 1923.

Canals — claim of contractor, engaged in building lock in Erie canal, for damages caused by water backing up from Barge canal — lock was to be completed during closed season — contractor was required to construct cofferdams sufficient only to take care of drainage in Erie canal — State breached contract when drainage was cut off and when water was turned into Barge canal — claim accrued under Code of Civil Procedure, § 264 (now Court of Claims Act, § 15), when contractor had pumped water from lock and ascertained damages.

The claimant entered into a contract for the construction of a lock in the Erie canal about fifty feet from the junction of the Erie and Barge canals. The contract provided that the work was to be completed during the closed season, while the water necessary for navigation purposes was out of the canal. At the point in question, the level of the Barge canal is some nine feet lower than that of the Erie canal. The contractor constructed cofferdams sufficient in strength to take care of the drainage in the Erie canal. Another contractor engaged in work on the Barge canal constructed a wall therein which shut off the drainage of the Erie canal, caused the water to back up and damage the claimant's plant, and on two other occasions the guard gates connecting the Barge canal with the Mohawk river were opened under the authority of the Superintendent of Public Works, and water was permitted to flow into the Barge canal with the result that water backed up and onto claimant's plant and damaged it. The cofferdams erected by claimant were not of sufficient strength to protect his work against these conditions.

*Held*, that while the claimant agreed to build suitable cofferdams and abide by the direction of the State Engineer, it had the right to assume that conditions in the canals would remain substantially the same as they were at the time, and it was not required to construct cofferdams of sufficient strength to withstand the floods that were sent against them when the drainage was shut off and when the guard gates on the Barge canal were opened;

That, therefore, the State is liable for the damage resulting, since, when it cut off the flow of the water in the Erie canal and backed it upon the claimant's plant to its damage, it breached the implied covenant in the contract that the State would not do anything to prevent the claimant from carrying out its contract or to hinder, delay or obstruct it in so doing, and when the State deliberately opened the gates and let the water into the canal from the Mohawk river, over the protest of the plaintiff, and thereby flooded its plant, it breached the contract.

The claim did not accrue under section 264 of the Code of Civil Procedure (now Court of Claims Act, § 15) until the water was pumped out of the lock by the contractor and it was able to take an account of the situation and ascertain the extent of the damage.

APPEAL by the claimant, Morrison & Quinn, Inc., from a judgment of the Court of Claims in favor of the defendant, entered in the office of the clerk of said court on the 3d day of November, 1920, dismissing the claim upon the merits.

*Joseph McSweeney* [*William F. Lynn* of counsel], for the appellant.

*Charles D. Newton*, Attorney-General [*W. J. Wetherbee* of counsel], for the respondent.

Clark, J.:

On the 16th day of October, 1916, the appellant and the State of New York entered into a contract for the construction by claimant of a lock in the Erie canal about fifty feet from the junction of the Erie and Barge canals near the village of Mohawk, N. Y. The purpose of this lock was to permit boats to pass into the Barge canal from the Erie canal, and from the latter into the Barge canal. At this point the level of the Barge canal is some nine feet lower than that of the Erie canal.

Appellant began work under this contract in December, 1916, and was prosecuting its work when the claim for damages arose which is hereinafter referred to.

This contract provided that the work was to be completed by May 1, 1917. The work was to be performed while the water necessary for navigation purposes was out of the canal, leaving only a small quantity of water in the basin, and this was provided for by appellant by constructing two cofferdams, one at the easterly end and one at the westerly end of its work with a box flume connecting them, so that this small quantity of water left in the canal, which flowed easterly, would be carried around the lock construction and emptied into the bed of the canal over the easterly cofferdam. The purpose of this easterly cofferdam was to prevent the water which went through the flume backing up onto appellant's work.

These cofferdams were sufficient for the purposes for which they were intended, but were not made to withstand the onward rush of the waters from the Mohawk river.

In the latter part of February, 1917, one Baker, who had a contract to construct a portion of the Barge canal where it adjoined the Erie canal near the point where claimant was working, constructed a north wall of the Barge canal one and a half miles east of appellant's work, which closed off drainage of the Erie canal and backed water upon appellant's work, which delayed him several days and damaged his plant.

On two other subsequent occasions appellant's work was flooded, and it sustained damages by water being turned into the Barge canal from the Mohawk river.

It appears that a short distance west of the junction of the two canals, and near where appellant was building the lock, the Barge canal opens out of the Mohawk river, and between the river

and the canal junction guard gates had been erected to prevent water from the river flowing into the Barge canal.

Contractor Baker's dredge had become fast in the Barge canal, and to remove it he opened these gates under the direction and by authority of the State Superintendent of Public Works. This occurred on two occasions, with the result that water backed up against and onto appellant's work causing damage, and for these three matters above referred to it filed a claim against the State.

The appellant had been personally notified by the Superintendent of Public Works that these Mohawk river gates would be opened, but no notice was ever given to him that the canal drainage was being or would be stopped, which occasioned the first claim for damages.

On the trial in the Court of Claims it was found that appellant's cofferdams were insufficient. The contract required appellant to erect and maintain suitable cofferdams, and it was found that before any of the claims for damages filed by appellant had arisen, the Superintendent of Public Works had notified claimant on several occasions that its cofferdams were insufficient, and that it should heighten and strengthen them, but the claimant did nothing in that regard.

The Court of Claims dismissed the claim on the ground that appellant's cofferdams were insufficient, and that it failed to follow the instructions of the State authorities with reference to raising and strengthening them, and that the damages to its work were due to its failure and neglect to follow the instructions of the officials and agents and servants of the State, and that the latter was free from negligence.

The contract between the appellant and the State provided, among other things, not only that claimant would build suitable cofferdams, but that the work under the contract " shall be executed to his [the State Engineer's] satisfaction and in conformity with his instructions."

The evidence was to the effect that the cofferdams as built by appellant were sufficient to take care of the water remaining in the Erie canal if the conditions had remained as they were when the water was let out after the close of navigation. These cofferdams were made to take care of the small quantity of water that remained in the Erie canal after the water was drawn off in the fall. They were not intended to withstand such quantities of water as were let in the Barge canal from the Mohawk river under the authority of the State officials.

40

When appellant entered into the contract it agreed to build suitable cofferdams and abide by the directions of the State Engineer, but it had a right to assume that conditions would remain substantially as they were at the time, and I think the law would imply as much, and that the directions of the State authorities would be reasonable.

It is urged by the State that appellant agreed to do the work in conformity with the instructions of the State Engineer, and to his satisfaction, but that meant to a reasonable satisfaction, and that his instructions would be reasonable. It would be unreasonable and not within the contemplation of the parties when the contract was made, that the contractor should build cofferdams that would withstand the floods that were sent against them by authority of the Superintendent of Public Works, when they authorized the opening of the Mohawk river guard gates.

Appellant's cofferdams were to take care of the waters in the Erie canal that remained after the season's navigation had closed and the water had been drawn off. Appellant was not obliged under a fair construction of the contract to assume the added burden and expense of building cofferdams high enough and strong enough to withstand any amount of water the State authorities might collect from the river, or by damming up and stopping drainage that was in operation when the contract was made, with the result of setting water back against and over the top of appellant's lower cofferdam, and damaging his work and machinery. (*Leahy* v. *City of New York*, 192 N. Y. 42.)

That was a case where a contract had been let by the city for the construction of a main sewer, and it provided that the contractor should take care of and pump out of the sewer trench all surface water entering the same, together with the flow from all existing sewers, etc. After the letting of the contract the city made other contracts for the construction of other sewers, and in constructing them large quantities of water were discharged into the uncompleted main sewer. The court in reversing a judgment dismissing the contractor's complaint said: "Under the express provisions of the contract the plaintiff did undertake to take care of the flow from the existing sewers, drains and natural watercourses; but we think it was not within the contemplation of the parties to the contract, nor a reasonable inference to be drawn from its provisions, that he was also to take care of the flow of the water collected in the new lateral sewers contracted for and constructed after he had entered into his contract for the construction of the trunk sewer, and that the city had no right to subject him to such additional expense and labor."

The respondent urges that appellant cannot recover for the damages which it claims resulted from the first overflow of its work because it failed to file notice of intention within six months after its alleged cause of action accrued, as required by the then existing section 264 of the Code of Civil Procedure.

That section provides, among other things, as follows: " No claim other than for the appropriation of land shall be maintained against the State unless the claimant shall within six months after such claim shall have accrued, file in the office of the clerk of the Court of Claims and with the Attorney-General a written notice of intention to file a claim against the State, stating the time when, and the place where such claim arose and in detail the nature of the same, which notice shall be signed and verified by the claimant before an officer authorized to administer oaths." (See Code Civ. Proc. § 264, as amd. by Laws of 1915, chap. 1, and Laws of 1917, chap. 669. Since amd. by Laws of 1919, chap. 157, and Laws of 1920, chap. 482; now Court of Claims Act, § 15, as amd. by Laws of 1921, chap. 474.)

The setting back of the water causing the first damage for which a claim was filed occurred February 26, 1917, and the notice of intention was filed August thirtieth of the same year. The section of the Code above quoted does not provide that the notice of intention to file a claim must be filed within six months from the time the injury was caused; it says " within six months after such claim shall have accrued."

This first flood occurred February twenty-sixth, but the damages could not be ascertained until the water had been pumped out, and that process occupied the time from the date of the setting back of the waters until March third, which was a period of five days. When the lock that appellant was building was pumped out, and it was able to take an account of the situation, then and not till then was the extent of the damage ascertained, and at that time the claim accrued. (*Dufel* v. *State of New York*, 198 App. Div. 97; *Paduano* v. *State of New York*, 203 id. 503.)

The judgment should be reversed and a new trial granted. Findings of fact Nos. 21, 22, 23, 24, 25 and 26, and conclusions of law Nos. 1, 2, 3, 4, 5, 6 and 7 are disapproved and reversed.

All concur, SEARS and CROUCH, JJ., in the result and as to the second and third items of damages; HUBBS, P. J., in a separate memorandum in which DAVIS and CLARK, JJ., concur.

HUBBS, P. J. (concurring):

I concur in the opinion of Mr. Justice CLARK. The plaintiff contracted to construct suitable cofferdams. That meant suitable

for the purposes in view of the situation and terms of the contract. The cofferdams which it constructed were suitable for such purposes. At least, they were sufficient to take care of all water which came upon the ground during the time they were used except water which the State unexpectedly caused to come there through its active conduct and negligence. In every contract, even though not expressed, there is an implied covenant that neither party thereto shall do anything to prevent the other party from carrying out the contract as entered into. The State impliedly agreed not to do anything to prevent the plaintiff from carrying out its contract, or to hinder, delay or obstruct it in so doing. (*Patterson* v. *Meyerhofer,* 204 N. Y. 96; *Wood* v. *Duff-Gordon,* 222 id. 88; *Brassil* v. *Maryland Casualty Co.,* 210 id. 235, 241; *Carns* v. *Bassick,* 187 App. Div. 280, 283.)

When the State cut off the flow of the water in the Erie canal and backed it upon the plaintiff's works to its damage, it breached such implied covenant, and when it deliberately opened the gates and let the water into the canal from the Mohawk river, over the protest of the plaintiff, and thereby flooded its works, it breached such contract.

The judgment should be reversed and a new trial granted.

DAVIS and CLARK, JJ., concur.

Judgment reversed and new trial granted, with costs to appellant to abide event.