GEORGE F. FISH FARMS, INC., Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 17355.)

Court of Claims, November 19, 1929.

*Edwin J. Brown* [*Charles Hitchcock* of counsel], for the claimant.

*Milton E. Gibbs, Deputy Attorney-General*, for the State of New York.

ACKERSON, P. J. This claimant is a domestic corporation. In the year 1922 one Samuel Griffin owned a quantity of land in the town of West Monroe, Oswego county, N. Y. In that year said Griffin leased about thirty-three acres of his said lands to this claimant. This was muck land and claimant cultivated and prepared about thirty acres thereof to plant to celery and other vegetables. After said land was prepared claimant planted about ten acres thereof to celery plants. For many years, going back prior to 1908, this land had been drained by a big ditch running into Oneida lake about one hundred rods away. This land had

been successfully used in prior years for raising celery and other vegetables, and before the dam was constructed at Caughdenoy they never had a crop failure on it and the water came upon the land only in the spring time. (Stenographer's minutes, 223.)

In the year 1922 after the ten acres were planted to celery the surface of Oneida lake rose to such a height that its waters flowed up the main drainage ditch of this property in question and flooded the same (Stenographer's minutes, 64, 65, 117, 208, 209), destroying the ten acres of celery and rendering the balance of the land unfit for use until it was too late to put in a crop.

After the flood, when the land became dry, the claimant planted another crop but it was so late in the season that it never matured.

The claimant's damages are not disputed by the State. Inasmuch as the crops on this land, belonging to the claimant, had not matured all that the claimant can recover is the rental value of the land plus the value of the labor used in preparing and planting it, together with the cost of seed, plants and fertilizer.

There is some little dispute about the exact acreage of the land in question. The evidence, however, abundantly upholds the contention that at least thirty acres were plowed and fertilized and prepared for planting.

The testimony of all the witnesses is that it had an annual rental value of fifty dollars per acre, which would fix the rental value of the thirty acres at fifteen hundred dollars. The testimony further discloses that it cost eighteen dollars per acre to fit this land for planting, which would total for the thirty acres five hundred and forty dollars. It also appears that the claimant used twenty tons of fertilizer at thirty-six dollars per ton which would amount to seven hundred and twenty dollars. Ten acres were set out to celery plants before the flood. It cost twenty dollars per acre or two hundred dollars for the necessary labor to set out those plants. There were three hundred thousand plants set on the ten acres. They cost one dollar per thousand or three hundred dollars. In addition the cost of the celery seed from which to raise the plants to be set on this property was forty-eight dollars.

The damages suffered by the claimant, then, and which are not disputed are summed up as follows:

Rental value of thirty acres of land at fifty dollars per acre.................................... $1,500 00

Cost of fitting said land for planting, including value of fertilizer used on same, together with value of necessary seed and plants with the cost of setting such plants................................ 1,808 00

Total...................................... $3,308 00

As above stated, the State did not offer any testimony to dispute claimant's contention that the damages suffered by it from the flood in question are as above stated.

It contends, however, that the State is not liable for these damages for two reasons:

*First,* because the land in question is not on the shore of Oneida lake.

*Second,* because the flood was caused by the excessive rainfall and not by the waters of Oneida lake.

Oneida lake is part of the Barge canal as constructed in accordance with chapter 147 of the Laws of 1903, and the laws amendatory thereof and supplementary thereto. Its only outlet is the Oneida river which has been used as a part of the canal system of the State for many years.

Prior to 1854 the State constructed a dyke, canal, lock and dam at Caughdenoy in said Oneida river. This was known as the Oneida River Improvement. As a result of this improvement it was claimed by those owning property on the shores of Oneida lake that the waters of the same were raised and that their property was flooded and damaged by reason thereof. In 1864 and in 1858 many claims were filed with the Board of Canal Appraisers by the owners of property on Oneida lake for such damages.

The Board of Canal Appraisers decided in all those claims that the work known as the Oneida River Improvement at Caughdenoy had raised the waters of the lake above their natural level, that the damages sustained and claimed were caused thereby and that the State was liable therefor to the claimants.

In 1908 and 1909 the State built a new dam at Caughdenoy as a part of the Barge canal construction. It is, and was, a solid, watertight, permanent, concrete dam. The raceway there, known as Hart's raceway, was closed and the embankment or dyke was raised and no means of any kind was provided for disposing of the flood waters held back by the dam except to let them discharge as best they could over the crest of the dam. The crest of the new dam then constructed had an elevation two and forty-seven one-hundredths feet higher than the crest of the old dam and it was built to raise the level of Oneida lake one and one-half feet at low water. The engineer for the State, Crocker, on the trial testified that the practical effect of it was to raise the waters of Oneida lake from two to two and one-half feet.

After the construction of this last dam many claims were again filed by the owners of property on Oneida lake for damages caused by the flooding of their property. It was contended by these claimants that this new dam at Caughdenoy constructed as a part

of the Barge canal construction further raised the elevation of Oneida lake resulting in the flooding and damages complained of. One of these claims, that of John A. Coble, was tried as a test case. The Board of Claims upheld the contention of the claimant and made an award in his favor holding that the flooding of his property was due to the raising of the waters of the lake by the State dam at Caughdenoy. The State appealed from this decision to the Appellate Division, Third Department, and the judgment of the Board of Claims was unanimously affirmed on January 5, 1916 (172 App. Div. 912).

On January 28, 1915, the Board of Claims was succeeded by the present Court of Claims. The State was not satisfied with the decision in the *Coble* case and desired to try another test case and make a new record. The claim of John H. Woglum was selected for that purpose. The claimant was the owner of a hotel and lot of land at the mouth of Oneida creek bordering on Oneida lake. In the spring of 1913 his land was overflowed and submerged, his hotel and other buildings thereon were injured and some of them were destroyed. The testimony on the trial of this claim was taken before Judge CHARLES R. PARIS, late of this court. The matters involved were gone into in detail and at great length, the trial beginning in May, 1916, and not being completed till June, 1918.

The court again found as in the *Coble* case, that the waters of Oneida lake were raised by the State dam at Caughdenoy which caused the flooding in question and that the State was liable for the damages caused thereby.

The State since that decision has not disputed the proposition that the dam which it built at Caughdenoy in 1908 and 1909 raises the surface level of Oneida lake. Nor has it denied its liability to respond in damages where such damages were caused solely by this higher elevation of Oneida lake. Many claims have been filed and awards made therein in accordance with the holding of this court in the *Coble* and *Woglum* claims.

The claimant contends that the question of the liability of the State in this case must be taken as *stare decisis*. That is undoubtedly true because the damages complained of were caused by the higher level of the waters of Oneida lake resulting from the dam at Caughdenoy. This property had a set of drainage ditches leading into a big ditch which discharged into Oneida lake. The dam at Caughdenoy was permitted by the State to hold back the flood waters of the lake in June, 1922, to such an extent that the waters of Oneida lake rushed up these ditches and flooded this property to a depth of about a foot for eight or ten days. (Stenographer's minutes, 75.) The State made no effort to lower this water by

opening the flood gate at Caughdenoy, although its agent, Clark, who had charge of the gate, testified they had too much water. (Stenographer's minutes, 443.)

The evidence discloses that the drainage ditches on this muck land were adequate to keep the water off the land and take care of the rainfall at all times except when the water from the lake backed up in this main ditch. (Stenographer's minutes, 117.)

It appears that they never had a crop failure on this land until after this Caughdenoy dam was built and that before that water came up on the land only in the spring time. (Stenographer's minutes, 223.) The testimony of those living on the border of Oneida lake is to the effect that the lake is higher since the Caughdenoy dam was completed than formerly; that it is higher in flood time and stays up higher longer than before said dam was built; that rocks that were visible before the dam was built are now wholly covered with water all the time. (Stenographer's minutes, 303-307.)

The State Engineer testifies that the elevation of Oneida lake during this flood was 373.2 feet on June twenty-fifth, and that on July third it was 373.3 feet. (Stenographer's minutes, 358.) Hutton, the civil engineer for the claimant, says that the lowest elevation on claimant's land was 371.90 feet and that the highest elevation of the muck land was 373.6 feet. (Stenographer's minutes, 30.) It also appears that the elevation of the bottom of the ditches was from 370.9 feet to 372 feet. (Stenographer's minutes, 362.) Also that the elevation of the bottom of claimant's main outlet ditch that leads directly into Oneida lake is 368.5 feet, which is lower than Oneida lake surface has been in ten years. (Stenographer's minutes, 367.) This ditch was dug before the dam at Caughdenoy was constructed and at a time when the normal surface of the lake had an elevation of from 367.5 feet to 368.5 feet. (Stenographer's minutes, 432-433.)

It appears, therefore, upon an examination of the evidence given as to the elevations of land and water above referred to that the high water in Oneida lake reached a point during this flood of June and July, 1922, where it was four and eight-tenths feet higher than the bottom of claimant's main drainage ditch; one and three-tenths feet to two and five-tenths feet higher than the bottom of all the rest of claimant's drainage ditches; and over a foot higher than the surface of much of claimant's muck land and within three-tenths of a foot as high as the very highest part of such land. The evidence also abundantly establishes the proposition that this high water was due to the Caughdenoy dam and but for such dam the surface of Oneida lake would have been from two to two

and one-half feet lower than the elevation it reached as above stated as the State's own witness, Engineer Crocker, testifies. (Stenographer's minutes, 400.) If the lake had been two and one-half feet lower its surface level would have been not only lower than the surface level of all of claimant's muck land, but it would have been lower than the bottom of many of claimant's drainage ditches and on a level with the bottom of all the rest of claimant's drainage ditches except the big main ditch.

It is apparent, therefore, that but for the State dam at Caughdenoy the surface of claimant's muck land would never have been under water at all during this flood and that the damage complained of could not have occurred. The damage, therefore, was caused by the high waters of Oneida lake, which reached the height that it did because of the Caughdenoy dam, and not by the rainfall.

That being the case, why should the claimant not be compensated for its damage? It seems to us that the State is liable in the same way and to the same extent as though this property were situated on the shore of the lake itself.

This property is tributary to Oneida lake. The lake is the only natural receptacle into which it is possible to drain the water which falls upon the surface of this land. These ditches, therefore, which form the drainage system of this property were constructed at a time when the surface of the lake was so low that rainfall on this land readily flowed through such ditches into the lake. That was before the Caughdenoy dam was built; before the State had raised the surface of Oneida lake from two to two and one-half feet for the purposes of navigation on the Barge canal.

The State cannot change the natural water levels on this lake by artificial structures which raise such levels in order to enhance the navigability of the canal system without becoming liable for damages to property owners whose lands are flooded by reason of the high waters so caused and which would not exist under natural conditions. That has been the holding of this court and of the tribunals that have preceded it in passing on these Oneida lake claims — a holding which has been upheld by the Appellate Division. We see no reason for making a distinction between damages suffered by lands lying on the shore of the lake and those lying a few rods back from the shore where the high waters of the lake reach them through drainage ditches.

It would seem that in such a case as this if the State structures so elevated the surface of the lake that the water simply backed up in the drainage ditches and thereby rendered them useless for the purpose for which they were designed and for which they

were successfully used before the State interfered with the natural level of the lake, the State in such a case would be liable to the claimant for the damages suffered because of its inability to drain its land. But in this case the water from the lake not only backed up in the ditches and rendered them useless when most needed, but the waters of the lake actually flowed up these ditches, rose over their banks and spread over a large portion of this land to the depth of a foot or more, thereby, of course, holding back all the rainfall, making the escape of that impossible, and thereby adding to the depth of the water on the land to such an extent that it all was submerged.

Under such circumstances, there cannot, in our opinion, be any question about the State's liability. The claimant herein, therefore, should have judgment for the amount of its damages proven on the trial as above set forth.

BARRETT, J., concurs.