ELMER F. ANDREWS, as Industrial Commissioner of the State of New York, on Behalf of the STATE INSURANCE FUND, Plaintiff, *v.* JULIUS GOODMAN, Doing Business under the Firm Name and Style of ALLIANCE BUILDING RENOVATING COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, Fifth District, September 24, 1936.

*John J. Bennett, Jr., Attorney-General* [*Patrick S. Mason, Special Assistant Attorney-General,* and *William H. Stieglitz* of counsel], for the plaintiff.

*Solomon Biederman,* for the defendant.

WHALEN, J.   On or about January 15, 1934, pursuant to the provisions of the Workmen's Compensation Law of the State of New York, the State Insurance Fund issued its policy insuring the defendant against liability for personal injuries, including death, sustained by his employees.   This policy continued in force until it was canceled for non-payment of premium on May 11, 1935. During this period plaintiff claims that the total earned premium based upon an audit of the defendant's actual payroll was $822.94. The defendant paid $780.64, and this action is brought to recover judgment for the balance of $42.30.   Defendant denies that there is any balance due, and asserts a counterclaim for $232.19 based on the fact that he was required to pay more as a premium rate than that charged to other employers in the same group to which he belongs, namely, painting, decorating, etc.   Defendant claims he was required to pay a rate 100 per cent higher than the so-called manual rate for this group, the manual rates being rates fixed by the Compensation Insurance Rating Board.   The plaintiff claims a right to fix a special higher rate of premium for defendant because of what is called the defendant's experience rating.   This raises an issue as to whether or not the State Insurance Fund is permitted to discriminate in the matter of rates between different employers in the same group.

At the outset it will be assumed that this court has no power or authority to review the action of the Industrial Commissioner in fixing rates. Defendant concedes this, but defendant maintains that if the action of the plaintiff in fixing rates of premium in the defendant's policy is illegal the contract in so far as the premium rates are concerned is void even though defendant may have agreed to pay these rates, under the authority of such cases as *Peabody, Jr., & Co., Inc.,* v. *Travelers Insurance Co.* (240 N. Y. 511), where the court said: " A contract to disregard an increase in such rates or basic rate, and to ignore the disapproval of the rating association, and, therefore, the Superintendent of Insurance, was against public policy and void." (See, also, *Great American Indemnity Co.* v. *Abbot Glass Co.,* 149 Misc. 439, and cases therein cited.)

It seems to be conceded by both sides that the State Insurance Fund is not controlled by the Insurance Law, sections 141 and 141-b, with respect to the fixing of rates. Briefly, the Insurance Law provides that insurance rates shall be fixed by rating organizations and approved by the Superintendent of Insurance. It further provides that if any one is not satisfied with such rates he must apply for a modification thereof to the Superintendent of Insurance, whose action is subject to review by the Supreme Court.

The only authority in the State Insurance Fund to fix rates is to be found in section 95 of the Workmen's Compensation Law which as now constituted reads as follows:

" § 95. Rates. Employments and employees in the State Fund shall be divided into such groups    *    *    *    as shall be equitably based upon the differences of industry or hazard for the purpose of establishing premium rates, and for such purpose a system of merit rating may be employed which shall take account of the peculiar hazard of each individual risk. Premiums in the State Fund shall be fixed at the lowest possible rates consistent with the maintenance of a solvent fund and of reasonable reserves and surplus."

Under the authority of this section it appears that the Industrial Commissioner, as administrator of the State Insurance Fund ever since the enactment of the Workmen's Compensation Law in 1914, has proceeded to fix different rates of premium for different employers in the same group based on individual experience ratings. Defendant claims that the Commissioner was and is without any authority to discriminate between various members of one group.

Counsel for both sides have stated that there is no decided case on this point and my own independent research has failed to disclose any such case. In construing the meaning of this section of

the statute it is necessary of course, to attempt to ascertain the intent of the Legislature as expressed in the language used. The language of section 95 is not perfectly clear on the question as to whether or not different rates may be established for different individuals in the same group. Do the words, " and for such purpose," relate to the division into groups or do they relate to the fixing of premium rates? If the quoted words refer to the division into groups, then the succeeding words, "A system of merit rating may be employed which shall take account of the peculiar hazard of each individual risk," would mean that an individual employer's experience rating would be employed only for the purpose of division into groups. If the words, " and for such purpose," refer to the immediately preceding phrase, " for the purpose of establishing premium rates," then the plaintiff's position herein is justified. In that view of it the section would be clearer if the words, " and for such purpose," were left out entirely.

In Opinions of the Attorney-General ([1916] p. 102) a somewhat similar question was considered. There the Attorney-General was asked to express an opinion on the question as to whether or not an individual employer might be classed in one group by himself. In that opinion there are *obiter dicta* referring to the point now under consideration, such as:

" In other words, the Commission is permitted to discriminate in the making of rates, but the nature of so doing is not arbitrary, but is presumed to take into account some hazard, or protection against some hazard, as for example, the number and variety of employees, as giving a special experience for insurance purposes, and the amount of safeguard preventatives of accident, adopted as part of the equipment or system of an employer, and which might justly entitle him to be classified as a separate class or risk, because of his peculiar hazard, and because he really represents at the time a class within a group. * * *

" The only way in which a single employer in the State Fund can secure a rate different from that allowed to other employers in such fund of the same group is through a system of schedule rating, as provided in the last sentence of Section 95. But, for dividend purposes, even an employer so rated still remains in the group in which he is placed and dividends must be declared as the result of the total experience of the group of which he is a member for the premium period."

While this opinion, written in 1916, is based on the old section 95 as it existed in 1916, I am of the opinion that there is no material change in section 95 pertinent to the point now subject to discussion.

The implication of the Attorney-General's opinion is that section 95 permits discrimination in rates between individual employers in the same group.

A case decided in Ohio has been discussed by both sides, namely, *State ex rel. Powhatan Mining Co.* v. *Industrial Commission* (125 Ohio St. 272; 181 N. E. 99 [April, 1932]). In that case the Industrial Commission had discriminated in rates to an individual employer under the Ohio Workmen's Compensation Law, under the provisions of a statute which specifically and unmistakably granted such a right, but the plaintiff in that case claimed that the statute itself was unconstitutional under the provisions of the Ohio Constitution authorizing the enactment of a Workmen's Compensation Law.

The constitutional provision in Ohio reads as follows: " Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and to determine all rights of claimants thereto." (Const. of Ohio, art. 2, § 35.)

The Constitution says nothing about discrimination between individual employers contained in the same group, but nevertheless the court held that the statute was within the spirit and intent of the constitutional provision and decided in favor of the Commission.

The plaintiff now argues: " The wording of the Ohio statute though somewhat clearer is in effect no different than that of the statute in New York. If Ohio may individually rate risks under the wording of the constitutional provisions, New York may most certainly do the same under its statutes." (Ohio Gen. Code, § 87.)

Not without significance is the fact that for a period of over twenty years, ever since the Workmen's Compensation Law was enacted, the State Insurance Fund has proceeded to fix different individual rates of premium for employers in the same group based on their experience rating. This seems to me to be a forceful argument in favor of the theory that there has been a practical interpretation and a construction of section 95 by all interests involved.

In *Matter of Wagner* v. *Wilson & Co.* (251 N. Y. 67, at p. 69) the court, by CARDOZO, Ch. J., said: " The ruling then made, though not brought to this court for review, follows, it would seem, as a reasonable deduction from the ruling in the *Adams* case. [*Adams* v. *N. Y., O. & W. R. Co.*, 175 App. Div. 714; affd., 220 N. Y. 579.] It has been accepted by the Board and by claimants for upwards of ten years, and has been left untouched through all of the many revisions of the act that have been adopted in the interval. We think it has wrought itself by construction into the body of the statute."

While the language of section 95 is not clear and unambiguous as to the right of the State Insurance Fund to discriminate between members of one group in the matter of premium rates, in view of the expression of opinion by the Attorney-General, *supra*, and in view of the practical construction given to the statute for so many years, I have come to the conclusion that the Industrial Commissioner is permitted to fix different rates of premium for different employers in the same group based upon the individual experience rating of each individual employer. With respect to justification for the rate fixed in this case I express no opinion. There seems to be no provision in the statute for a review in any court of the action taken by the Industrial Commissioner in the matter of premium rates, but I have no doubt the Supreme Court has equitable power sufficient to prevent any unjust discrimination in a proper case. This court cannot review the action of the Industrial Commissioner, and defendant's only relief, if any, from any claimed unjust discrimination must be sought in the Supreme Court. Plaintiff is entitled to judgment as demanded and the counterclaim is dismissed without prejudice.