WILLIAM MOLTION et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 28266.)

HERMAN A. SCHREYER et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 28267.)

WALTER R. CAMPBELL et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 28268.)

WILLIAM S. YOUNG et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 28275.)

MICHAEL PEDERZOLLI et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 28276.)

ROSE HAFERMALZ, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 28277.)

JOHN CHEMOTTI et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 28286.)

ARTHUR C. SADLER et al., Claimants, v. STATE OF NEW YORK, Defendant. (Claim No. 28288.)

ISABEL ANDREWS, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 28461.)

Court of Claims, December 3, 1948.

*Raymond M. Bush* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Arthur W. Mattson* and *Harold S. Coyne* of counsel), for defendant.

LOUNSBERRY, P. J. These claims have been filed against the State of New York to recover damages to the property of the

claimants situated in the town of Cicero, Onondaga County, New York, bordering on Oneida Lake. It is claimed that the damage to the claimants' property was the result of the flooding of said lands caused by the negligence of the State of New York, its agents and employees, in the operation and control of the Barge Canal including Oneida Lake.

The claims filed by the claimants are similar to those filed against the State of New York over a period of many years; the first of which claims was filed in 1854.

We do not believe it is necessary to develop the history of the Oneida River, Oneida Lake and Caughdenoy Dam or the claims previously filed by persons whose property bordered on or adjoined Oneida Lake. This history has been very ably and thoroughly discussed by Judge ACKERSON in *Fish Farms, Inc.*, v. *State of New York* (135 Misc. 188) and by Judge BARRETT in *Haskell* v. *State of New York* (13 N. Y. S. 2d 192, affd. 258 App. Div. 930).

The damages to the claimants' property were allegedly caused by the increased elevation of Oneida Lake in the early part of October, 1945, as the result of heavy rains during September and October 1 and 2, 1945.

In 1908 and 1909, the State of New York constructed a concrete dam at Caughdenoy, which permanently raised the level of Oneida Lake, according to Barge Canal data, 2.47 feet. The only means of permitting the escape of water from Oneida Lake is over the Caughdenoy Dam, the sluice gate in the old abandoned lock, controlled by a vertical lift, and the guard gate at Lock No. 23, being also a vertical lift bridge. There are no other means for permitting the water of Oneida Lake to flow out of said lake. The real purpose of the floodgate adjacent to the dam is to increase the outflow from Oneida River. The guard gate at Lock 23 was primarily a protective agency for the locks.

On September 1, 1945, the elevation of Oneida Lake at Sylvan Beach was 370.5 feet and on September 15th it was 370.6 feet. From September 15th until October 2d, the water in Oneida Lake continued to rise almost steadily until on October 2d, when it reached a height of 372.7 feet. On October 4th, the elevation was the same as on October 2, 1945. The elevation from that date gradually decreased until October 31, 1945, when it was 370.9 feet. No evidence was introduced to show the elevation of the lake after October 31, 1945. The construction of the Caughdenoy Dam in 1908 and 1909 per-

manently raised the elevation of the surface of Oneida Lake from 368.5 to 370 feet. The minimum navigable level of the lake is 369.89 feet.

From the 19th day of September, 1945, to the 4th day of October, 1945, inclusive, the inflow of water into Oneida Lake considerably exceeded the outflow. On October 3, 1945, the inflow was 31,122 cubic feet per second and the outflow 10,663 cubic feet per second. The evidence shows that the greatest outflow that can take place, if and when all the gates are open, is approximately 13,000 cubic feet per second. In spite of the steady rise of the waters in Oneida Lake, there were no gate openings either at Caughdenoy Dam gate or at Lock 23 for the month of September, 1945. The first record of the opening of the gate at Caughdenoy was on October 2, 1945, when it was pulled clear of the water for a period of twelve hours, and for a period of twenty-four hours on October 20th. The guard gate at Lock 23 was on October 2d raised two feet for three hours and four feet, eighteen hours, and on October 3d and 4th, four feet for twenty-four hours; on October 5th, four feet for eight and eight-tenths hours.

The property of the claimant, Moltion, was flooded by the waters of Oneida Lake, which remained thereon for several weeks. As a result of the flooding of claimant Moltion's property, his shrubbery and landscaping were washed away, the lawn damaged as well as the foundations of the house and porch, the driveways and the lake front. The floor of the kitchen was also damaged, and the claimant was deprived of the rent of the cottage for three months. All the other claimants suffered severe damage to their properties as a result of the flooding, which damages were given in detail upon the trial.

The claimants offered in evidence the entire proceedings in the case of *Haskell* v. *State of New York* (*supra*). *Haskell* v. *State of New York* (*supra*) included the findings of fact and conclusions of law, the opinion and decision of the Presiding Judge BARRETT, and the entire case and exceptions and judgment roll in the Appellate Division, also the findings of fact and conclusions of law in the case of *Hazel B. Field Clark* v. *State of New York,* Claim No. 26224. The court reserved decision on the admission of these records, findings and decisions, and now sustains the objection of the State because it does not appear that these records, findings and decisions will be of any particular aid to the court in making a decision in the cases at bar.

It was stipulated by the Attorney-General and the attorney for the claimants that no changes have been made in the construction of the Caughdenoy Dam or the floodgate in connection therewith, or in the so-called guard gate at Lock 23, except for the fact that between the decision in the *Haskell* case (*supra*) and the decision in the *Hazel B. Field Clark* case the Oneida River channel between Oneida Lake and Lock 23 was deepened, and after the decision in the *Clark* case in 1940, the dike at Lock 23 was strengthened and the Oneida River was deepened after the 1940 flood from Lock 23 to Phoenix, N. Y., on the Oswego River.

The gates at Caughdenoy Dam and Lock 23 were not opened until traffic on the Barge Canal was halted because of high water, which was October 2, 1945, and on which date the elevation of Oneida Lake almost reached its peak.

The State contends that the structures placed in the Oneida River were not for flood control purposes, but were actually placed there to make possible the operation of the Barge Canal. This fact undoubtedly is true. However, if the State, in the operation of said canal, causes damage to the property of others it must become liable therefor. We are of the opinion that the State, its employees and agents, should have carefully watched the rising waters of Oneida Lake and opened the gates at the dam and at Lock 23 at a much earlier date, particularly in view of the fact that for a considerable time prior to October 2d the records of the State indicated that the daily inflow of water into the lake greatly exceeded the outflow, and that a rise of the waters of Oneida Lake was inevitable, and for the further reason that they knew the outflow was greatly restricted.

There can be no dispute that the construction of the Caughdenoy Dam raised the elevation of Oneida Lake 2.47 feet. Therefore, "The State cannot raise the natural water levels on this lake by artificial structures which raise such levels in order to enhance the navigability of the canal system without becoming liable for damages to property owners whose lands are flooded by reason of the high waters so caused and which would not exist under natural conditions. That has been the holding of this court and of the tribunals that have preceded it in passing on these Oneida Lake claims — a holding which has been upheld by the Appellate Division." (*Fish Farms, Inc.,* v. *State of New York,* 135 Misc. 188, 193, *supra.*)

The claimant contends, and undoubtedly properly so, that the question of liability in these claims must be taken as

*stare decisis.* It was so held by Judge ACKERSON in *Fish Farms, Inc.,* v. *State of New York* (*supra*).

Claims for flooding against the State by the waters of Oneida Lake, as hereinbefore pointed out, have been regularly filed against the State of New York and paid for over a period of nearly 100 years. The 1924 report of the State engineer and surveyor pointed out that the facilities for regulating the level of Oneida Lake were inadequate, and recommended that additional floodgates be constructed at or near the Caughdenoy Dam in order to prevent flooding and suggested a particular type of floodgate for this purpose. To date nothing has been done to alleviate this flood condition caused by the raising of the elevation of Oneida Lake.

The State, in its motion for dismissal at the completion of the claimants' case and again at the end of the trial, moved that the claims be dismissed on the ground that the State had a prescriptive right to flood the premises of the property owners adjoining or near Oneida Lake and was therefore not liable. The State also in its brief urged this court for dismissal on this ground. This motion, the decision of which was reserved, cannot be considered because no evidence of the right of prescription by the State was introduced or presented at the trial. Therefore, this question is not before the court.

The State also moved for a dismissal of these claims on the ground that they were not filed within the time prescribed by section 10 of the Court of Claims Act. The evidence on the trial indicated that these premises were flooded well into November, 1945; that ice was frozen around the houses and yards, in the driveways and on some properties in the dwellings. There is also evidence that this condition continued into January, 1946. The extent of the damage to these properties was not ascertainable until the water had receded and the ice melted. The full amount of damage to some of these properties was not apparent until the following spring.

It is well established that, at least for the purpose of determining the timeliness of the filing of a claim or notice of intention to file claim, a claim is not deemed accrued until the extent of the damages can be ascertained. (*Edlux Constr. Corp.* v. *State of New York,* 252 App. Div. 373 [1937], affd. without opinion, 277 N. Y. 635; *Consiglio* v. *State of New York,* 247 App. Div. 832 [1936]; *Paduano* v. *State of New York,* 203 App. Div. 503 [1922]; *Morrison & Quinn, Inc.,* v. *State of New York,* 204 App. Div. 623 [1923]; *Di Laura* v. *State of New York,* 169 Misc. 912 [1939].)

" The expression ' claim accrued ' is not identical with the expression ' cause of action accrued.' The claim accrues when it matures, and the words ' claim accrued ' have the same meaning as ' damages accrued.' " (*Dufel* v. *State of New York,* 198 App. Div. 97, 102 [1921].) In the latter case, the claimant suffered intermittent flood damage to his land and crops as a result of the construction of the dam by the State. The damage began May 1, 1916 and claimant filed his notice of intention November 27, 1916. At that time section 264 of the Code of Civil Procedure required that a notice of intention be filed within six months from the accrual of the claim and the State therefore objected that the claim was not timely filed. The court held that the claim was not accrued until the end of the crop season when the claimant could ascertain the full extent of his damage.

It is also established that even though some part of the damage may be ascertained more than ninety days prior to the filing of the claim, or notice of intention, the claimant is not required to file a separate claim therefor, but may wait until the whole damage is determined. (*Di Laura* v. *State of New York, supra.*)

All of the above-entitled claims were due and timely filed in the office of the Clerk of the Court of Claims, have not been assigned or submitted to any other court or tribunal for disposition.

The court is therefore of the opinion that there is no question of the liability of the State of New York. The claimants herein should have judgment for the respective amount of damages proven by them upon the trial as follows:

| | |
|---|---|
| William Moltion and Eleanor Moltion | $1,000 |
| Herman A. Schreyer and Lillian M. Schreyer | 500 |
| Walter R. Campbell and Louise M. Campbell | 400 |
| William S. Young and Ida H. Young | 250 |
| Michael Pederzolli and Mary Pederzolli | 250 |
| Rose Hafermalz | 750 |
| John Chemotti and Teresa Chemotti | 250 |
| Arthur C. Sadler and Helen B. Sadler | 200 |
| Isabel Andrews | 250 |

The claimants may within fifteen days after the filing of this memorandum in the office of the Clerk of the Court of Claims file findings of fact and conclusions of law in accordance therewith, otherwise this opinion will be considered the decision.

Let judgment be entered accordingly.