SKATING VANITIES Co., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31012.)

Court of Claims, February 14, 1953.

*Harry H. Shayon* and *Isidore Miller* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Douglas L. Manley* of counsel), for defendant.

SYLVESTER, J.   This claim, submitted on a stipulated statement of facts, seeks recovery from the State Insurance Fund of premiums amounting to $2,177.41, claimed to have been improperly exacted by the fund in respect of a policy of workmen's compensation insurance issued to claimant covering the period from May 6, 1949, to May 6, 1950.   The claim arises under the following circumstances:

On May 6, 1944, the State Insurance Fund issued a policy of compensation insurance to Roller Follies, Inc., claimant's predecessor, which was thereafter renewed from year to year and assigned to claimant in 1947.   It provided, among other things: '' This policy is accepted by the employer subject to the manual rules, classifications, rating plans and rates adopted by The State Insurance Fund and also subject to annual revision in accordance with such rules, classifications, rating plans and rates, with the agreement that the classifications, rates and premiums are subject to either change, correction or modification, in accordance with such manual rules, classifications, rating plans and rates.   Such revision, change, correction or modification, if any, shall be expressed by endorsement indicating the effective date thereon.''

On March 28, 1949, the fund wrote claimant regarding renewal of the policy for the year beginning May 6, 1949, stating that since claimant's accident record during its latest insurance

period was "clearly sub-standard", the policy would "be renewed on the basis of unconditional 200% over Board Rates." These board rates are promulgated by the Compensation Insurance Rating Board, organized under article 8 of the Insurance Law and govern premiums chargeable by private carriers but are not made applicable to the State Fund, which is expressly exempted therefrom by subdivision 3 of section 44 of the Insurance Law.

After an exchange of correspondence between the claimant and the fund regarding coverage for the extraterritorial activities of claimant, the policy was renewed on the basis of the rates referred to on May 6, 1949. The renewal indorsement specifically described the rates payable as "uncond. 200% B.R.". Since the premium at board rates was $3,747.67, the rate payable was $11,243.01, which sum was actually paid to the fund by claimant.

The policy, however, was expressly made subject to a retrospective rating plan, which provided for periodic adjustments of the premiums paid, based on the insured's actual loss experience during the insurance period. In accordance with this procedure, a credit of $5,317.95 was subsequently allowed claimant on November 30, 1950. Claimant was advised of this credit by letter dated January 3, 1951, which enclosed an accounting for the period from May 6, 1949, to May 6, 1950, and which stated that the accounting "shows a very favorable loss ratio".

It should be noted that prior to the receipt of this accounting, claimant, on April 6, 1950, had agreed to a renewal of the policy for the period beginning May 6, 1950. In arranging this renewal, the fund advised claimant that the renewal policy "would be on the same State Fund rate basis as we applied last year, namely, on the basis of unconditional 200% over board rates with our retrospective rating plan endorsement." Claimant acknowledged receipt of this communication by its letter, dated April 6, 1950, stating that "(we) instruct you to renew our policy starting May 6th, 1950. Thank you very much."

It is stipulated that the claim submitted is "intended to challenge only the fund's power to depart from Rating Board rates" and is "not intended to question whether the premium charged was otherwise excessive, arbitrary or unreasonable."

The authority of the State Fund to fix premium rates derives from sections 83 and 89 of the Workmen's Compensation Law. Section 83 empowers the commissioners of the fund to adopt rules providing for the conduct of its business, including "the fixing of premium rates". Section 89, the

validity of which is here challenged, provides as follows: " *Rates.* Employments and employees in the state fund shall be divided into such groups and classes as shall be equitably based upon differences of industry or hazard for the purpose of establishing premium rates, and for such purpose a system of merit rating may be employed which shall take account of the peculiar hazard of each individual risk. Premiums in the state fund shall be fixed at the lowest possible rates consistent with the maintenance of a solvent fund and of reasonable reserves and surplus." (Formerly §´95, as amd. by L. 1926, ch. 533; as renum. § 89, by L. 1938, ch. 585, § 6, eff. July 1, 1938.)

Claimant urges that section 89 above quoted constitutes an unconstitutional delegation of legislative power in that it contains no proper standards to be followed by the fund in the fixing of premium rates. Claimant also contends that the fund had no authority " to adopt a second rating system in fixing claimant's rates." This latter contention relates to the practice of the fund in adopting board rates in the underwriting of its ordinary risks. It is urged that the language of section 89 authorizes the fund to employ " *a* system of merit rating " and that the fund, having become a member of the rating board and having adopted its rates, was without power to depart therefrom in the writing of its insurance.

Turning first to the constitutional question presented, it is concluded that this case does not involve a delegation of legislative function. The fund is not empowered to fix the rates chargeable by private carriers. It is authorized merely to fix rates upon policies of insurance issued by it. Actually, the State Fund is an insurance carrier operated under the auspices of the State which insures employers against claims of employees for injuries. " As to workmen's compensation it [the State Fund] is merely a managed fund competing on the same basis with other private insurance companies " (*Matter of Torpedo Dress Corp.*, 176 Misc. 60, 63, affd. 259 App. Div. 994, affd. 285 N. Y. 626; *Commissioners of State Ins. Fund* v. *Dinowitz*, 179 Misc. 278, 279).

But even if it be regarded that lawmaking authority had been delegated to the State Fund, it is clear that the standards of rate-making set forth in section 89 of the Workmen's Compensation Law are sufficiently definite to comply with the requirement that adequate legislative criteria be promulgated for the guidance of the administrative agency. It is provided that employments and employees are to be divided into such

groups and classes as shall be equitably based upon differences of industry or hazard and that a system of merit-rating may be employed which shall take account of the peculiar hazard of each individual risk. It is also provided that premiums shall be fixed at the lowest possible rates consistent with the maintenance of a solvent fund and of reasonable reserves and surplus. Certainly, it may not be reasonably maintained that the Legislature is required to fix the individual rates applicable to the thousands of employers engaged in multifarious industries or to prescribe the numerous and varying factors which must necessarily be considered. The administrative agency is, however, instructed to take into account all of the factors which affect the hazard of each risk and is further required to fix rates consistent with the maintenance of a solvent fund and of a reasonable reserve and surplus.

The delegation of rate-making authority to administrative agencies has long been accepted governmental practice. (*People ex rel. Central Park, North & East Riv. R. R. Co.* v. *Willcox,* 194 N. Y. 383; *Matter of Village of Saratoga Springs* v. *Saratoga Gas, Elec. Light & Power Co.,* 191 N. Y. 123; *City of New York* v. *Maltbie,* 274 N. Y. 90; *Noyes* v. *Erie & Wyoming Farmers Co-op. Corp.,* 281 N. Y. 187, 194.) In the cases cited, the standards fixed by the legislation for the guidance of the administrative rate-making agency were comparable to those included in section 89. In *Matter of Village of Saratoga Springs* v. *Saratoga Gas, Elec. Light & Power Co.* (*supra*), the legislative requirement was that " reasonable " rates be fixed. Dealing with the definiteness of this standard, the court said, per CULLEN, Ch. J., at page 147 : " But it is said that granting this, ' reasonable ' is really no standard but a mere generality. Again, we are of a different opinion. Indeed, if the statute assumed to fix any other standard for rates than that they should be reasonable, we think it would be much more open to attack than in its present form. A lawmaker might exhaust reflection and ingenuity in the attempt to state all the elements which affect the reasonableness of a rate only to find that in a particular case he had omitted the factor which controlled the disposition of that case." Similarly, in *Noyes* v. *Erie & Wyoming Farmers Co-op. Corp.* (*supra*), the Commissioner of Agriculture and Markets was empowered to effect an equalization of milk prices so that all producers should receive the same price for milk delivered " subject to reasonable differentials for quality and location and for services ".

Thus, even upon the assumption that there is a delegation of rate-making authority, it appears, nevertheless, that a sufficiently definite standard is embraced in the legislation.

Claimant urges further that the fund, having adopted the rates fixed by the rating board, has no power to adopt another and different rating system in the application of " over Board " rates, adjusted by the retrospective rating plan. But the power of the State Fund to depart from board rates has been expressly sustained (*Andrews* v. *Goodman,* 160 Misc. 664, affd. N. Y. L. J., Nov. 5, 1938, p. 1498, col. 7; *Miller* v. *Newport Sand & Cement Corp.,* 257 App. Div. 906). In *Sadigur* v. *State of New York* (40 N. Y. S. 2d 925, 928, revd. on other grounds 267 App. Div. 59) this court expressly stated that " the Fund is not bound by the rates of the Compensation Insurance Rating Board ".

The rating board is organized pursuant to section 181 of the Insurance Law, in accordance with which insurers are authorized to subscribe to and become members of rating organizations, licensed by the Superintendent of Insurance, whose function it is to make rates, subject to the approval of the Superintendent, for its constituent members. The operation of this rate-making organization was described in *Employer's Liability Assur. Co.* v. *Success Uncle Sam Cone Co.* (124 Misc. 614, 616): " The compensation inspection rating board mentioned in the policy of insurance and the endorsement (WCU 2630, N. Y.) is a rate-making association of the insurance carriers who do a compensation insurance business in the State of New York, and is maintained for the purpose of filing collectively with the superintendent of insurance the various classifications of risks and premium rates relating thereto adopted by such insurance carriers, and obtaining approval of premium rates, which rate-making association functions by virtue of authority derived from sections 67 and 141, of the Insurance Law, and the Superintendent of Insurance. The compensation inspection rating board, for the purpose of insuring uniform, reasonable, and adequate rates, inspects risks and rates them in accordance with certain instruments, known as the Manual of Compensation and Liability Insurance or Rate Manual."

Though the State Insurance Fund is expressly exempted from the rate-making and regulatory provisions of section 181, the State Insurance Fund is and for many years has been a member of the Compensation Insurance Rating Board. As was pointed out in *Sadigur* v. *State of New York* (267 App. Div. 59, 62, *supra*): " While the State Insurance Fund was exempt from

the provisions of section 67 as then in effect, it appears from the record that in 1914 or 1917 it voluntarily became a member of the Compensation Insurance Rating Board, and while the right and obligation to fix rates to be charged remained in the State Fund, it determined these rates upon information furnished by the Insurance Rating Board, thereby adopting the rate schedules as found by this actuarial or fact finding agency.''

The lower court had held that the State Fund, having originally fixed rates in accordance with its own manual and rating plan, could not thereafter retroactively apply rates fixed by the Insurance Rating Board. In reversing, the Appellate Division held otherwise, saying, per SCHENCK, J., at page 63: '' The base rates, or manual rates, were determined by the general experience of the business in which insured was engaged and the merit rate is based upon the experience of the individual business or employer. Thus, the premium charged is a combination of both items. Under the provisions of the policy the State Fund was required to adopt a rate manual and rate plans. In carrying out this requirement it could make its own actuarial examination or employ an insurance rating board to make such examination and adopt a premium rate based on that board's finding. The State Fund had voluntarily become a member of the Insurance Rating Board and the adoption of rates based on its report is in nowise a violation of the statute.''

The net effect of these decisions is that the fund may (*Sadigur* v. *State of New York*, 267 App. Div. 59, *supra*),. but is not required to (*Andrews* v. *Goodman, supra*; *Miller* v. *Newport Sand & Cement Corp., supra*), adopt board rates. In short, the fund, as an insurer carrier, exempted from the rate regulatory provisions of the Insurance Law (Insurance Law, § 180 *et seq.*; § 44, subd. 3), is free to fix premium rates in the exercise of an independent judgment, subject only to the requirements of section 89 of the Workmen's Compensation Law. No contention is made that these requirements have not been satisfied.

There is no substance to the contention that more than one merit system has been adopted, allegedly in violation of section 89 of the Workmen's Compensation Law which authorizes the fund to adopt '' *a* system of merit rating.'' This view is too literal and imposes an unduly restricted interpretation upon the language of section 89 of the Workmen's Compensation Law and would defeat its obvious purpose. The fund, taking into account the individual risk and its loss experience, charges either board rates or over board rates, modified by its retrospective rating

plan. Actually, claimant, in effect, protests that different rates are payable by different employers dependent upon the risk, a result which is not only permitted but required by the statute.

The State urges that the claimant, having contracted to pay " over Board rates " and having voluntarily paid these premiums, cannot now recover, in any event. A contract of insurance in violation of the Insurance Law is clearly against public policy and unenforcible (*Peabody, Jr., & Co.* v. *Travelers Ins. Co.*, 240 N. Y. 511; *Employers Liability Assur. Corp.* v. *Hayes Constr. Co.*, 243 N. Y. 261); and payments made under a mistake of law may be recovered (Civ. Prac. Act, § 112-f), despite earlier authority to the contrary (*People* v. *Wilmerding*, 136 N. Y. 363, 374; *Maguire* v. *State of New York*, 247 App. Div. 698, affd. 273 N. Y. 665; *Vielberth* v. *State of New York*, 273 N. Y. 667; *Adrico Realty Corp.* v. *City of New York*, 250 N. Y. 29).

It is further contended by the State that the claim was not timely filed. The last premium payment was made on September 29, 1950. The notice of intention was filed on April 11, 1951, and the claim was filed on October 29, 1951. But the rates, the validity of which is challenged, were expressly made subject to adjustment after payment and were in fact revised as late as March 15, 1951. Until then, claimant could not ascertain the amount, if any, of his damage. Under these circumstances, it is settled that the claim is timely. (*Morrison & Quinn* v. *State of New York*, 204 App. Div. 623; *Paduano* v. *State of New York*, 203 App. Div. 503; *Moltion* v. *State of New York*, 193 Misc. 850; *Taylor* v. *State of New York*, 302 N. Y. 177.)

The claim is properly here, though the State contends that this court is without jurisdiction to review the " rate-making " of the State Fund, which it is said is reviewable only in an article 78 proceeding. Governmental rate-making, as has been established, is not here involved. The claim concerns the construction and validity of a contract of insurance entered into between a State agency and the claimant, a matter expressly reserved to the jurisdiction of this court (Court of Claims Act, §§ 8, 9; *Sadigur* v. *State of New York*, 267 App. Div. 59, *supra*; *Skakandy* v. *State of New York*, 274 App. Div. 153).

Judgment is directed dismissing the claim. The foregoing constitutes the written decision of the court (Civ. Prac. Act, § 440).