Caroline K. Simon, J.
On June 22, 1960, claimant-contractor entered into an agreement known as Contract FABLP 60-1, FAVWE 60-1, with the Department of Public Works of the State of New York for construction work on the Belt Parkway and Van Wyck Expressway in the Counties of Kings, Queens and Nassau. The specified work was performed during the years 1960, 1961 and 1962, and was accepted by the State on March 27, 1962. During February and April of that year, liens had been filed against the contract. The Comptroller accordingly made no payments thereafter until the liens were lifted on May 10,1966.
A final agreement was sent to claimant by the State on July 12, 1962. It was neither acknowledged, signed nor returned. A subsequent final agreement No. 3 was issued on May 14, 1963. The State tendered final payment on June 30, 1966, which payment was returned by claimant on July 12, 1966. A claim was filed in the Court of Claims on August 3, 1966, listing eight causes of action — for moneys due under the contract, for extra work, labor and materials performed and supplied outside the terms of the contract, for breach thereof and for incorrect computations. Previously, no notice of intention to file a claim had been filed.
The State now moves to dismiss the claim on the ground that it has not been timely filed, alleging that more than two years have elapsed since the submission of the final estimate on May 14, 1963, and that subdivision 4 of section 10 of the Court of Claims Act requires that a claim for breach of contract against the State be filed within six months after the accrual of such claim, unless a written notice of intention is substituted therefor, thus extending the filing time to two years after such accrual. The State urges that the statutory period begins to run as of the date of the final estimate.
The court respects the vigor and care with which the arguments of counsel for both parties on this point of law have been presented. The basic question to be resolved is the date when the claim accrued. Black’s Law Dictionary [4th ed.], at page 37, states ‘ ‘ A cause of action ‘ accrues ’ when a suit may be maintained thereon.” In the instant matter, determination of the date upon which the claim accrued hinges upon a consideration of the nature and legal implications involved in the practice *547 of submission of a final estimate in the performance of, and payment for construction contracts.
Article 9 and article 10 of the standard Public Works agreement provide as follows:
‘ ‘ ARTICLE 9. FINAL ACCEPTANCE OF WORK.
“When in the opinion of the District Engineer a contractor has fully performed the work under the contract, the District Engineer shall recommend to the Superintendent of Public Works the acceptance of the work so completed. If the Superintendent accepts the recommendation of the District Engineer, he shall thereupon by letter notify the contractor of such acceptance, and copies of such acceptance shall be sent to other interested parties.
“ ARTICLE 10. FINAL PAYMENT.
“After the final acceptance of the work, the Engineer shall prepare a final estimate of the work done from actual measurements and computations relating to the same, and he shall compute the value of such work under and according to the terms of the contract. This estimate shall be certified to as to its correctness by the Engineer. Upon approval of such final estimate by the District Engineer, it shall be submitted to the Superintendent for final approval. The right, however, is hereby reserved to the Superintendent to reject the whole or any portion of the final estimate, should the said certificate of the Engineer be found or known to be inconsistent with the terms of the agreement or otherwise improperly given. All certificates upon which partial payments may have been made being merely estimates, shall be subject to correction in the final certificate or estimate.” (Italics added.)
The court recognizes that, under the provisions cited {supra), the Superintendent of Public Works reserves to himself the power to modify a final estimate after issuance and at any time up to the tender of a check in payment of the final amount. During this time interval, a contractor may expect, and very often is faced with one or more adjustments in the amount due him, for reasons that may be both valid and proper in the careful expenditure of State funds for public purposes. In the instant matter, no such change was made, though permitted under the contract terms.
The court is satisfied that claimant’s first opportunity to ascertain the precise amount of its damage, not to be changed except for court order, came only when a check in payment was *548 tendered it on June 30,1966, since prior to that date the amount stated to be due on the final estimate could have been changed by the unilateral act of the Superintendent of Public Works.
The State, in its brief, has cited Di Laura v. State of New York (169 Misc. 912 [1939]) for the well-settled proposition that a claim accrues when the claimant knows the extent of its ascertainable damage. Further discussion of this principle is found in Edlux Constr. Corp. v. State of New York (252 App. Div. 373 [1937], affd. without opn. 277 F. Y. 635), and Michael v. State of New York (187 Misc. 342 [1946]), both cited in each party’s brief.
Davison, Claims Against the State of Few York ([1954], p. 231) states “ A claim is not deemed accrued until the extent of the damages can be ascertained ”, citing Moltion v. State of New York (193 Misc. 850 [1948]) for this proposition, as well as for the principle that ‘ The claimant is entitled to wait until the whole damage is ascertainable ”.
We must therefore determine the date at which claimant could ascertain the amount of his damage. (Skating Vanities Co. v. State of New York, 203 Misc. 779, 787 [1953].) Was the amount of damage precisely enough stated in the final estimate, even though the Superintendent of Public Works could thereafter alter the sum at any time before the check in final payment was sent to claimant? The court must conclude that claimant could have filed its notice of intention to file a claim after it received the final estimate, and that the exact amount claimed could have been amended thereafter if there was to be a change made in the sum stated to be due, as a result of the Superintendent of Public Works having revised the final estimate.
Claimant offers another explanation for not having filed a claim or a notice of intention to file a claim after receipt of the final estimate. Claimant’s counsel contends that liens then in effect prevented claimant from exercising such right since claimant could not properly allege that the amounts then due were owing to it, the lienors’ rights then being paramount, and not having been extinguished until May 10, 1966. Claimant asserts that the statutory period must therefore be computed either from that date, or from June 30,1966, the date the State’s check in final payment was tendered.
Black’s Law Dictionary [4th ed.], at page 1072, defines a lien as “A charge or security or incumbrance upon property.’’ Cases cited in support of the statement that “ A ‘ lien ’ is not a property in or right to the thing itself, hut constitutes a charge or security thereon ” (italics added) include Koenig v. Leppert- *549 Roos Fur Co. (260 S. W. 756, 758 [Mo. App.]); Steagall-Cheairs Fertilizer Co. v. Bethume Mule Co. (181 Ala. 250); Powers v. Fidelity & Deposit Co. of Maryland (180 S. C. 501). Letters were sent by the Comptroller to claimant advising it that the liens had been filed and that no further payments would be made under the contract until the liens had been discharged.
Claimant contends that the existence of these liens against the contract during the period from February and April of 1962 to May of 1966 prevented the State from disbursing any funds in payment to anyone, including the debtor-contractor, without a court determination, and that a claim filed during this interval would have been dismissed as not properly filed. The existence of the liens did not prevent claimant from filing its notice of intention or its claim, but would only affect the receipt by payee of the sums determined to be due after a decision on the claim had been rendered.
In Wheeler v. State of New York (49 N. Y. S. 2d 939 [1944]) then Presiding Judge Barrett reviewed the genesis of the Court of Claims Act and its rules, and concluded “ The statutory requirements as to the filing of claims against the state cannot be waived, and it is incumbent upon this court to consider and pass upon them.” In Buckles v. State of New York (221 N. Y. 418 [1917]) timely filing is termed a jurisdictional requirement which may not be waived, but can be raised at any time.
The court regards the submission of a final estimate as notice to the contractor of the amount the State then intends to pay for the work performed. The court further considers this notice as sufficient for the contractor, at that point of time, to decide whether or not to institute suit for any additional sums it may consider due and owing to it. Final and absolute exactitude as to the amount to be paid is not essential for the commencement of an action. Subsequent modification in the amount of damages sought or conceded is common practice in the courts.
The essential element in any litigation is the timely commencement of suit within the prescribed limiting periods clearly set forth in the statutes, and which bind the parties. Deviation from this strict requirement is only countenanced where unusual extenuating circumstances are demonstrated. The court finds no such compelling circumstances in the instant matter.
The foregoing analysis compels the court to conclude that the claim has not been timely filed, and that the State’s motion to dismiss must be and is hereby granted.