498 P.2d 564

R. S. FULTON, aka Bob Fulton dba Bob Fulton Trucking Company, Appellant,

v.

Reid WOODFORD and Harleysville Mutual Insurance Company, a Pennsylvania corporation, Appellee.

HARLEYSVILLE MUTUAL INSURANCE COMPANY, a Pennsylvania corporation, Cross-Appellant,

v.

R. S. FULTON, aka Bob Fulton dba Bob Fulton Trucking Company, Cross-Appellee.

GLENS FALLS INSURANCE COMPANY, a New York corporation, Appellant,

v.

William Earl PATTERSON et al., Appellees.

Nos. 1 CA–CIV 1684, 1 CA–CIV 1805.

Court of Appeals of Arizona, Division 1.

June 29, 1972.

Rehearing Denied July 31, 1972.

Review Denied Oct. 3, 1972.

Lewis & Roca by John P. Frank, Joseph
E. McGarry and Paul G. Ulrich, Phoenix,
for Fulton.

Gust, Rosenfeld & Divelbess by Richard A. Segal, Phoenix, for Woodford.

Renaud, Cook, Miller & Cordova, P. A. by J. Gordon Cook, Phoenix, for Harleysville.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by John H. Lyons, Phoenix, for Glens Falls.

Hughes, Hughes & Conlan by Coit I. Hughes and John C. Hughes, Phoenix, for Patterson.

HOWARD, Judge.

This opinion resolves appeals taken from two separate lawsuits which are a segment of the litigation following in the wake of a wrongful death action.

## BACKGROUND SUMMARY

The facts which gave rise to the wrongful death action are as follows. Sheriff, general contractor of a Circle K Market construction project, entered into a subcontract with Sanner Contracting Company for paving and supplying the necessary dirt fill. Sanner contacted Conway, a licensed Arizona Corporation Commission carrier, to supply trucks for the job. Conway had a $100,000 comprehensive general automobile liability insurance policy issued by Glens Falls Insurance Company containing an "automatic coverage" rider required by the Corporation Commission. This rider extended coverage to all losses, damages, injuries or deaths occurring while the vehicles insured were operated as motor carriers under Conway's certificate of convenience and necessity.

Conway did not have enough trucks for the job and therefore contacted Fulton, also a Corporation Commission licensed carrier, and asked him to supply additional trucks. Fulton had a Harleysville $100,000 general automobile liability insurance policy which also contained the automatic certificate of insurance required by the Cor-

poration Commission. Additionally, Fulton had a $50,000 comprehensive general liability policy issued by Employers Casualty Company. Fulton did not have enough trucks in proper running condition to meet Conway's needs so his son, acting for Fulton, asked Patterson to supply his truck for the hauling undertaking. Patterson had a $10,000 U. S. F. & G. Company automobile liability insurance policy.

On his first run, Patterson collided with a motorcycle operated by Johannsen and the accident resulted in Johannsen's death. His widow, on behalf of herself and four surviving children, brought a wrongful death action against Sheriff, Sanner, Conway, Fulton and Patterson.

On January 31, 1964, Harleysville accepted the tender of Fulton's defense and advised him in a letter of that date that the Johannsen claim was in excess of the Harleysville coverage and that attorney Woodford would represent him. (Woodford also represented Patterson.) About two weeks later, the law firm which regularly represented Fulton, advised Woodford and Harleysville that it represented Fulton and wished to be informed of all proceedings and receive copies of all pleadings. Fulton was subsequently deposed by Johannsen's attorney without his law firm being advised of same and Woodford wrote to Fulton on behalf of Harleysville advising him that the insurer was continuing his defense under a reservation of rights.[1]

Employers Casualty Company was notified by Fulton's law firm as to the pendency of Johannsen's suit but Employers refused to defend on the ground of noncoverage. Neither Harleysville nor Woodford made any attempt, prior to trial of the Johannsen suit, to establish that Employers or Glens Falls, Conway's insurance carrier, owed coverage to Fulton. Harleysville's policy imposed upon it the responsibility for investigation, negotiation and settle-

---

[1] Harleysville's position was predicated on the fact that Patterson's truck had been listed as one of Fulton's certificated trucks since 1956, had been shown as being co-owned by Fulton and Patterson, and had never been listed as an insured vehicle.

ment of such claims or suits as it deemed expedient and required its insured to cooperate and assist in effecting settlement. It further prohibited the insured from voluntarily making any payment, assuming any obligation or incurring any expense except at his own cost.

Subsequently Conway, Sanner and Sheriff moved for summary judgment against Johannsen. No opposition thereto was filed by Woodford nor did he appear at the oral argument on said motions. Furthermore, neither Fulton nor his personal counsel were advised of the motion or of the granting thereof until the date set for trial. The trial date was accelerated, pursuant to plaintiff's motion, and Fulton was not apprised thereof until several days before trial. Woodford did not inform Fulton's counsel of the acceleration and they only learned of the new trial setting from Fulton.

At the pretrial conference, there was some discussion about a range of settlement but neither Fulton nor his personal attorneys were aware of such discussion.

The Johannsen lawsuit was tried to a jury which returned a verdict of $200,000 in favor of the plaintiff. U. S. F. & G., prior to trial, had paid $9,000 and obtained a covenant not to execute against Patterson, and on December 18, 1964, a judgment for $191,000 was entered against Fulton and Patterson, jointly and severally. Fulton appealed therefrom and since Harleysville was willing to supersede only $100,000 of the judgment, Fulton himself had to obtain a $91,000 supersedeas bond which he accomplished by mortgaging his business property and depositing $10,000 in cash as collateral.

On July 20, 1965, Fulton filed a declaratory judgment action in federal court against Employers and Glens Falls.[2] Glens

Falls moved for summary judgment which was denied on the ground that Conway had a nondelegable duty of care as a licensed carrier to furnish insurance affording coverage for any breach of his duty to operate trucks without an unreasonable risk of harm to the traveling public. Fulton immediately filed a motion for summary judgment against Glens Falls but before the motion was ruled upon, the Johannsen judgment was affirmed on appeal. *See* Fulton v. Johannsen, 3 Ariz.App. 562, 416 P.2d 983 (1966). As a consequence thereof, Fulton was faced with the prospect of execution against his business property to satisfy the $91,000 excess judgment or foreclosure of the mortgage and forfeiture of the $10,000 collateral.

Glens Falls and Employers agreed to lend him $30,000 and $15,000 respectively if Fulton would dismiss the pending federal court declaratory judgment action and pursue an action against Harleysville for its bad faith and negligence in handling the Johannsen claim. Fulton was obligated to repay these sums only in the event of recovery against Harleysville. Fulton decided to accept this offer as he was able to raise an additional $46,000, thus satisfying the $91,000 excess judgment. In December, 1966, a stipulation of dismissal was filed in federal court[3] and simultaneously therewith Fulton filed suit in superior court against Harleysville and Woodford.

In June, 1967, Harleysville filed suit against Employers and Glens Falls in federal court which resulted in summary judgment in favor of Harleysville and against Glens Falls. The district court found that Patterson's U. S. F. & G. insurance policy provided primary coverage for the Johannsen accident and that Harleysville and Glens Falls afforded equal, secondary and proportionate coverage to Patterson and Fulton. Glens Falls was directed to pay

---

2. Fulton's position was that the Employers general liability policy applied to the Johannsen claim, that Conway's Glens Falls policy provided coverage and that he was an additional insured under the hired vehicle provision of Conway's policy.

3. Harleysville had been granted leave to intervene in Fulton's federal court action. The dismissal was with prejudice as to all parties except Harleysville as to whom the dismissal was without prejudice.

Harleysville the sum of $22,461.41[4] and Glens Falls appealed to the Ninth Circuit Court of Appeals. (Case No. 25548, submitted for decision November 29, 1970.)

## APPEAL FROM FULTON VS. HARLEYSVILLE & WOODFORD LITIGATION

In his complaint, Fulton alleged that Harleysville had wrongfully refused to settle or compromise the Johannsen claim prior to trial; that, acting through its counsel Woodford, the insurer had negligently conducted the preparation of Fulton's defense; that Harleysville was negligent in its selection of an attorney; and that Woodford was guilty of malpractice in his conduct of Fulton's defense. Harleysville counterclaimed for reimbursement of the amount it had paid to satisfy the judgment against Fulton. Harleysville and Woodford filed motions for summary judgment and *solely* for purposes of these motions, they conceded the malpractice and/or negligence and/or bad faith.

The lower court in granting both motions, concluded that Fulton, when faced with a $91,000 excess judgment, had a duty to mitigate his damages and that he had voluntarily compromised his claims against Glens Falls at a time when it seemed certain that he would prevail as to coverage of the loss by Glens Falls, and therefore there would be no excess judgment over and above the insurance coverage. The court further ruled that the Glens Falls policy was "deemed" to have covered the loss, that Fulton was judicially estopped to deny same, and that a claim for bad faith would not lie since the judgment was less than the total insurance coverage, namely $210,000.[5]

Fulton moved for summary judgment on Harleysville's counterclaim for reimbursement and the lower court, in granting the motion, ruled that the Harleysville policy

afforded coverage since the Patterson truck qualified as a temporary substitute vehicle. Reversal of the trial court's rulings on the respective motions for summary judgment is sought on appeal.

■ As we indicated above, Harleysville and Woodford, *solely* for purposes of their motions for summary judgment, conceded the truth of Fulton's allegations of bad faith, negligence and malpractice. Our only consideration therefore, in reviewing the propriety of summary judgment against Fulton, is whether there are any issues of fact to be litigated. Flynn v. Lindenfield, 6 Ariz.App. 459, 433 P.2d 639 (1967). The doctrine of avoidable consequences precludes a plaintiff from recovering damages for losses he could have avoided by reasonable conduct on his part. Coury Brothers Ranches, Inc. v. Ellsworth, 103 Ariz. 515, 446 P.2d 458 (1968); Restatement of Contracts § 336 (1932); 5 Corbin on Contracts § 1039 (1964). The lower court apparently concluded that any losses sustained by Fulton were occasioned by his own conduct in settling with Glens Falls when it seemed certain that he would prevail on the question of Glens Falls' coverage.

■ We are of the opinion that the existence of a factual issue precluded the granting of summary judgment in favor of Harleysville and Woodford. Whether or not Fulton used reasonable means under the circumstances to avoid or minimize the damages and how much in dollars and cents he could have minimized them was a question to be resolved by the trier of fact. Valley Development Co. v. Weeks, 147 Colo. 591, 364 P.2d 730 (1961); Chandler-Simpson, Inc. v. Gorrell, 464 P.2d 849 (Wyo.1970); 22 Am.Jur.2d Damages § 339 (1965).

Harleysville does not contend that the loan agreement between Glens Falls, Employers and Fulton *ipso facto* barred Fulton from recovery. It merely argues that

---

4. This sum represents the difference between what Harleysville had expended and what it would have paid had Glens Falls paid its pro rata share.

5. The $210,000 consisted of $100,000 Harleysville coverage, $100,000 Glens Falls coverage, and $10,000 U. S. F. & G. coverage.

"Fulton's failure to pursue his remedy against Glens Falls to establish coverage that he does not now on appeal argue did not exist, prevents his recovery because he therefore was not exposed to a judgment in excess of his valid and collectible insurance or because Harleysville is entitled to consideration of its other insurance clause or because Fulton therefore failed to prevent an avoidable consequence to him."

■ It is true that it may ultimately be determined, once and for all, that Fulton would have been covered by the Glens Falls insurance policy issued to Conway. However, whether or not Fulton exercised the amount of care required is not to be measured by *ex post facto* wisdom and he was not bound at his peril to know the best thing to do. Hogland v. Klein, 49 Wash.2d 216, 298 P.2d 1099 (1956). His failure to seek an early determination of the question of Glens Falls' coverage and his subsequent dismissal of his suit against Glens Falls and Employers are but two factors to be considered with all the other circumstances in deciding the reasonableness of Fulton's conduct.

Harleysville's counterclaim against Fulton sought recovery of the sum of $121,573.68 which Harleysville had paid toward principal and interest on the Johannsen judgment. Its claim for reimbursement was based upon an endorsement contained in its policy which provided that the insured agrees to reimburse the insurer for any payments made on account of any accident which Harleysville would not have been obligated to make under the provisions of its policy except for the terms of the endorsement. Harleysville took the position that it would not have been obligated to make any payments on behalf of Fulton or Patterson had the Arizona motor carrier endorsement and automatic certificate of insurance not been required. Fulton moved for summary judgment on two grounds: (1) Harleysville was estopped to deny coverage and (2) the Patterson vehicle was a temporary substitute vehicle and therefore covered under the Harleysville policy.

The trial court, in granting Fulton's motion, ruled that Fulton was insured by Harleysville because the Patterson vehicle was a temporary substitute vehicle under the following policy definition:

". . . An automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; . . ."

Harleysville concedes that at the time of the Johannsen accident the Patterson vehicle was not owned by Fulton and that a Fulton vehicle was disabled. Therefore if the Patterson vehicle was being "temporarily used as a substitute" for one of the vehicles described in the Harleysville policy, coverage attached.

■ The purpose of the substitution provision is to extend coverage temporarily and automatically, without the payment of an additional premium, to the insured to protect him when he uses a vehicle not specified in the policy in place of the specified vehicle he intended normally to use but did not because of its withdrawal from use for a reason stated in the policy. Lloyds America v. Ferguson, 116 F.2d 920 (5th Cir. 1941); Hemphill v. Home Ins. Co., 121 Ga.App. 323, 174 S.E.2d 251 (1970); Lewis v. Bradley, 7 Wis.2d 586, 97 N.W.2d 408 (1959). A substitute automobile within the meaning of the policy is one actually but only temporarily used in place of the specified automobile, i. e., for the same use the insured car would have been used except for its withdrawal from all normal use and while such withdrawal is because of its breakdown, repair, servicing, loss or destruction. In other words, it is a vehicle put in place of another. West-

ern Casualty & Surety Co. v. Norman, 197 F.2d 67 (5th Cir. 1952); Little v. Safeguard Ins. Co., 137 So.2d 415 (La.App. 1962).

■ We agree with Harleysville that it is not the purpose of the substitution .clause to give the substitute vehicle a wider coverage. Here the undisputed facts indicate Fulton was employing Patterson's truck to perform Fulton's undertaking with Conway. The only reason for the use of Patterson's truck on the day in question was the disablement of one of Fulton's trucks which would have been used, had it been available, to the same extent as was Patterson's truck. Under these circumstances, Patterson's vehicle was a temporary substitute for Fulton's vehicle and therefore insured under the Harleysville policy. Lumbermens Mutual Casualty Co. v. Harleysville Mutual Casualty Co., 367 F.2d 250 (4th Cir. 1966); Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co. v. Hartford Accident & Indemnity Co., 310 F.2d 618 (4th Cir. 1962).

Harleysville cites Tanner v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., 226 F.2d 498 (6th Cir. 1955) which construed the substitution provision to mean "a car which was in the possession or under the control of the insured to the same extent and effect as the disabled car of the insured would have been except for the disablement." Since the facts in *Tanner* differ considerably, we are disinclined to accept its definition of a substitute vehicle. In *Tanner*, a brother of the insured was involved in an accident while driving his own car on an errand in behalf of the insured because of the disrepair of the insured's automobile. The brother had no insurance in his own name and enroute he picked up his wife and children for a ride. Actually the errand performed by the brother was no more than a brotherly

accommodation and was not for the purpose of fulfilling a prior undertaking of his brother.

There being no material factual issue and the Patterson vehicle meeting the test of a temporary substitute vehicle within the policy coverage, summary judgment in favor of Fulton was appropriate. Although Harleysville makes much of the fact that Fulton derived no monetary benefit from the use of the Patterson vehicle, such factor is immaterial since it is "use" which is determinative.

The judgment in favor of Fulton on the counterclaim is hereby affirmed whereas the judgment in favor of Harleysville and Woodford on Fulton's claim is reversed and the cause remanded for further proceedings not inconsistent herewith.

## APPEAL FROM GLENS FALLS VS. PATTERSON, FULTON, HARLEYSVILLE

On February 10, 1970, several months after judgment was entered in federal district court in favor of Harleysville requiring Glens Falls to reimburse Harleysville for a proportionate share of sums paid out by Harleysville, Glens Falls filed suit in superior court seeking reimbursement from Patterson, Fulton and Harleysville. Its claim against the individuals was predicated upon a reimbursement provision of its policy whereas its claim against Harleysville alleged the latter's bad faith and negligence in the Johannsen litigation.[6]

The three defendants respectively filed motions to dismiss and the trial court, after taking judicial notice of the pleadings in the two federal court actions and in the superior court action between Fulton, Harleysville and Woodford, granted all three motions. The record reflects that the trial court concluded that, as to all three de-

---

6. As to Patterson and Harleysville, the sum of $52,461.41 was sought, representing the $30,000 paid to Fulton which was contingently repayable and the $22,461.41 federal court judgment. As to Fulton, only the amount of the judgment was sought.

fendants, Glens Falls' complaint failed to state a claim for relief.

We are of the opinion that the summary disposition of the lawsuit as to these three defendants was appropriate. A claim must be ripe at the time suit is commenced, and if not, the suit is fatally defective as premature. *See* Lane v. Hognason, 12 Ariz.App. 330, 470 P.2d 478 (1970); Phelps v. Herro, 215 Md. 223, 137 A.2d 159 (1957). If the party seeking relief has not yet been damaged, the action is premature. Logan v. New York Tel. Co., 200 N.Y.S.2d 474 (Sup.Ct.1960).

As noted above, the $30,000 was a "loan" to Fulton, repayable only in the event of Fulton's success in his lawsuit against Harleysville. However, the possibility of repayment by Fulton was not foreclosed since the Fulton-Harleysville litigation had not terminated. *See* 1 Am. Jur.2d Actions § 91 (1962). Likewise, the federal court judgment against Glens Falls was not yet conclusive as to Glens Falls' liability. *Cf.* Campbell v. Superior Court, 105 Ariz. 252, 462 P.2d 801 (1969); Great American Ins. Co. v. Fred J. Gallagher Const. Co., 16 Ariz.App. 479, 494 P.2d 379 (1972); Casa Grande Trust Co. v. Superior Court, 8 Ariz.App. 163, 444 P.2d 521 (1968).

Since Fulton might yet repay the $30,000 "loan" and the Ninth Circuit Court of Appeals might reverse the judgment in favor of Harleysville, Glens Falls' suit suffered from prematurity and dismissal was justified.

We therefore affirm.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.