Lynn **SIMONS, State Superintendent of Public Instruction, in her official capacity, and Barbara Rogers, in her official capacity, Michael A. McName, in his official capacity, Carwin Linford, in his official capacity, John Patton, in his official capacity, Patricia M. Lauber, in her official capacity, Everett Kilmer, in his official capacity, Cynthia Boyhan, in her official capacity, and Glenn Engelking, in his official capacity as Members of the State Board of Education, Appellants (Defendants),**

v.

**LARAMIE COUNTY SCHOOL DISTRICT NUMBER ONE, State of Wyoming By and Through its Duly Elected Trustees, Jean Cotton, in her official capacity, Don Herber, in his official capacity, Keith Rounds, in his official capacity, Richard Brown, in his official capacity, Art Mercer, in his official capacity, Al Atkins, in his official capacity, Gladys Frentheway, in her official capacity, Appellees (Plaintiffs).**

No. 87–46.

Supreme Court of Wyoming.

Aug. 20, 1987.

Joseph B. Meyer, Atty. Gen., and Rowena L. Heckert, Sr. Asst. Atty. Gen., Cheyenne, for appellants.

Paul J. Hickey of Rooney, Bagley, Hickey, Evans & Statkus, Cheyenne, for appellees.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

The Wyoming State Superintendent of Public Instruction and the members of the State Board of Education appeal a trial-court decision determining that a statute was unconstitutional which reduced state educational funding for a specific school district because the county assessor allegedly under-assessed in that county, consequently reducing local resource contributions within the total funding formulae. In the declaratory judgment proceeding, by holding the offset provision unconstitutional, the trial court awarded a judgment in favor of the school district for the withheld funds, in the amount of $366,345.94.

After considering the four issues raised: mootness; sovereign immunity; untimely filed claim; and constitutionality of the statute, this court affirms.

## FACTS

In pursuit of a fundamental constitutional responsibility, and responsive to the litigation in *Washakie County School District No. One v. Herschler,* Wyo., 606 P.2d 310, cert. denied 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980), the Wyoming legislature has attempted to provide a broad-based state and local resource funding system for public education. An immediate, intrinsic and pervasive difficulty was encountered from unequal and inequitable local tax assessments, which directly affected state contributory responsibility. To address this obvious and well-considered problem, § 21–13–310(c), W.S.1977, effective June 30, 1983, was enacted as complementary to a variety of other legislative reviews and to specific assessment legislation more recently enacted:

> "(c) Annually, commencing on July 30, 1984, the state board of equalization, when determinable, shall certify to the department of education whether or not the level of local assessments for any category in each county is in accord with the requirements of the board of equalization and, if not, the percent by which the assessments are below the board's requirements. *If the assessment level of locally assessed properties for any category in any school district is more than five percent (5%) below the board's requirements, the department shall increase the amount of revenue to be included in the sum of local district resources under paragraphs (a)(i) and (ii) of this section by the amount of locally assessed value for any category necessary to comply with the board's requirements times the appropriate mill levies under paragraphs (a)(i) and (ii) of this section.* This subsection does not apply if the board of equalization has complied with W.S. 39–1–304(a)(ii) and (iii), has ordered the valuations corrected and has certified the new valuations to the state department of education." (Emphasis added.) Chapter 136, S.L. of Wyoming 1983.

The last two sentences of this statute were repealed by the provisions of Ch. 146, S.L. of Wyoming 1985, effective July 1, 1985. It is these two sentences, repealed a year after they were adopted, that caused the controversy now presented in this appeal.

By letter dated October 11, 1984, the chairman of the State Board of Equalization, which agency had the constitutional and statutory responsibility for tax assessment adequacy and equalization, advised the Superintendent of Public Instruction of under-assessment in five counties. Based upon these stated percentages, in application of the state foundation program funding deduction factor, the Superintendent of Public Instruction reduced the allotment for seven separate public school districts of which plaintiff was the largest loser, with total operational funding $322,731.67, and construction allotment funding $43,614.27.

Laramie County School District No. 1 (School District No. 1) filed suit against the State Superintendent of Public Instruction and the membership of the State Board of Education (State) on January 17, 1985. On October 18, 1985, the trial court granted summary judgment to the State on the basis that filing a claim with the State Auditor as the statutory condition precedent to suit was omitted. School District No. 1 immediately filed the notice of claim and moved to amend its existing lawsuit. The motion to amend was granted, and the case continued, in accord with earlier filed stipulations of fact, to summary judgment disposition resulting in award of the encumbered funds to School District No. 1 by determination that § 21–13–310(c) was "unconstitutional as being violative of Article 3, Section 27 of the Wyoming Constitution."

## ISSUES

As stated by the State, we find the contended issues to be:

"I. THE SOVEREIGN IMMUNITY OF THE STATE BARS THE MONETARY CLAIM, AND WITHOUT IT THE DECLARATORY JUDGMENT ACTION IS MOOT.

"II. APPELLEE FAILED TO FILE A CLAIM WITH THE STATE AUDITOR

WITHIN ONE YEAR OF ACCRUAL, AS IS REQUIRED BY W.S. 9-1-404.

"III. THE CHALLENGED STATUTE IS NOT A SPECIAL LAW FOR THE ASSESSMENT AND COLLECTION OF TAXES."

Included in the text of arguments, subarguments included as to sovereign immunity, (1) only the declaratory part of this judgment was properly sought; (2) since there is no waiver of immunity in the Act, a declaration of unconstitutionality and an injunction against further enforcement were the only proper remedies to be sought by School District No. 1; and (3) there is no evidence of harm to public education in the district.

In detailing its second issue of belated claim filing, it was contended that both the Constitution and the statute required timely filing and that accrual of the cause of action and not determination of amounts would start the statutory limitation of one year. Finally, as to constitutionality, appellant argued (1) that there is a strong presumption of constitutionality; (2) that the challenged statute is not a law enacted for the assessment of collection of taxes; (3) that the classification made by the statute is reasonable and served an important state objective; and (4) that the statute affected all school districts in the same situation the same way and consequently afforded a rational classification.

Restated by appellee, the issues as affirmatively presented are:

"A. THE DISTRICT COURT PROPERLY FOUND SEC. 21-13-301(c) W.S.1977 TO HAVE BEEN UNCONSTITUTIONAL.

"B. THIS ACTION IS NOT BARRED BY SEC. 9-1-404 W.S.1977 REPUBLISHED.

"C. THIS ACTION IS NOT BARRED BY THE SOVEREIGN IMMUNITY OF THE STATE, AND IT IS NOT MOOT."

This court will address the procedural issues first, then the substantive constitutional issue, and will last consider whether mootness denies recovery of the money claimed.

I

BELATED CLAIM NOTICE FILING PURSUANT TO § 9-1-404, W.S.1977

It is apparent that the State attempted to avoid serious consideration of the constitutional issue in arguing for procedural disposition. Thus, the first argument includes the contention that under the circumstances School District No. 1 was required to comply with the notice of claim provisions of § 9-1-404, W.S.1977:

"Except as provided by W.S. 1-39-101 through 1-39-119, persons having claims against the state shall document the claim and submit it to the state auditor within one (1) year after the claim accrues, to be audited, settled and acted upon."

The statute does not define persons for the purpose of claim requirement as either including or excluding other state agencies or local governmental instrumentalities. Conversely, the notice provision for claims pursuant to the Wyoming Governmental Claims Act, § 1-39-101 et seq., W.S.1977, is two years, although case law makes clear that governmental agencies are not eligible claimants under that statute. See *Carbon County School District No. 2 v. Wyoming State Hospital*, Wyo., 680 P.2d 773 (1984); *State v. Board of County Commissioners of Johnson County*, Wyo., 642 P.2d 456 (1982), which decisions, however, were not premised on any immunity inquiry.

We will not now decide whether § 9-1-404 applies to state government instrumentalities. Initially, the trial court concluded that the notice provision would apply, and we need not review that opinion in approving the present timeliness decision of the trial court in his conclusion:

"The following facts appear from the joint stipulation of the parties:

"1. By letter dated October 11, 1984, the State Board of Equalization notified the Superintendent of Public Instruction of the amounts by which property assessments in this county along with four other counties were below the require-

ments of the State Board of Equalization. In this letter, it was stated that 'we can now provide a more solid estimate of an amount for those five counties in order that you may adjust school funding as requested by your letter of September 27, 1984.'

"2. By letter dated October 19, 1984, the Director of Fiscal Services notified the Laramie County School District No. 1 that the previous assessment of lands and lots was below the State Board's requirement and an adjustment was therefore required pursuant to W.S. § 21–13–301(c), and stating 'this adjustment affects the assessed valuation for your district and will be reflected when the foundation program is recalculated in January. A revised computer printout reflecting this change is attached.' (No such computer printout appears in the stipulated record)

"3. Pursuant to W.S. § 21–15–101, capital construction funds in the revised amounts for fiscal 1984–1985 were distributed to all school districts on or about December 30, 1984. The capital construction funds paid to Laramie County School District No. 1 in December 1984, were down $43,614.27.

"4. Plaintiffs were not notified as to the reduction of the foundation program until February 15, 1985. This recalculation resulted in a reduction of $322,731.67.

"A fair assessment of these facts makes it clear that the Plaintiffs' claim did not *accrue* until December 30, 1984 at the earliest. The complete claim for reimbursement of both capital construction and foundation funds did not accrue until that final recalculation was made known to Plaintiffs by a letter dated February 15, 1985. Thus, the filing of Plaintiffs' claim on October 28, 1985 was timely as being within the one year limitation.

"A cause of action does not *accrue* until all of the elements (i.e., in a tort action, the elements of duty, breach, proximate cause, and damage) are present. See *Davis v. City of Casper*, 210 [710] P.2d 827 (Wyo.1985); *Anderson v. Bauer*, 681 P.2d 1316, (Wyo.1984); *Duke v. Housen*, 589 P.2d 334 (Wyo.1979).

"If a party seeking relief has not yet been damaged, an action is premature. *Foltson [Fulton] v. Woodford* [17 Ariz. App. 490], 498 P.2d 564, (Ariz.App.1972). A cause of action does not accrue until the existence of such a state of things as will enable a person having the proper relations to the property or persons concerned to bring an action. *Cantonwine v. Fehling*, 582 P.2d 592, (Wyo.1978)."

This court is not now led to a converse conclusion that a claim must be filed until amounts involved as events of claim can be computed. The letter upon which the State contends that the claim period commenced stating that

"'* * * this adjustment affects the assessed valuation for your district *and will be reflected when the foundation program is recalculated in January,'"*

does not meet the specificity requirement.

 Although involving the Governmental Claims Act, we would consider the reasoning in *Davis v. City of Casper*, Wyo., 710 P.2d 827, 829 (1985) to be persuasive and decisive:

"* * * The appellants argue that the torts occurred in 1976 when the governmental officers committed negligent acts. They believe that a tort can occur without damage. In our recent decision in *Anderson v. Bauer*, Wyo., 681 P.2d 1316, 1321 (1984), we held otherwise. We stated that, '[e]ach homeowner's cause of action accrued on or about the date water seepage was first noticed and *damage occurred * * *.'* (Emphasis added.) In other words, a tort is not complete and actionable until all the elements, duty, breach, proximate cause, and damage, are present."

See also, *Cantonwine v. Fehling*, Wyo., 582 P.2d 592 (1978); *Terteling v. United States*, 334 F.2d 250, 254, 167 Ct.Cl. 331 (1964); *Garrett v. Raytheon Co., Inc.*, Ala., 368 So.2d 516, 519 (1979); *Magnus v. Jackson*, 31 Cal.App.3d 399, 107 Cal.Rptr. 287, 288 (1973); *Hangen v. Hangen*, 241 Cal. App.2d 11, 50 Cal.Rptr. 203, 205 (1966); *Terry Contracting, Inc. v. State*, 51 Misc.2d 545, 273 N.Y.S.2d 528, 530 (1966);

and *Berry v. Branner*, 245 Ore. 307, 421 P.2d 996 at 998 (1966). If it were to be determined that a notice of claim is required in intergovernmental relationships, which decision is not presently made, we would discern that the time commences when the authorizing agency computes and advises whatever sum will be paid or withheld and why. See *City of Evanston v. Griffith*, Wyo., 715 P.2d 1381 (1986) (although an administrative appeal rather than a declaratory judgment case).

## II

### SOVEREIGN IMMUNITY DEFENSE

The State contends that School District No. 1 is denied right to contest nonpaid school funding on the basis that sovereign immunity of the state intervenes. No authority is cited which applies sovereign immunity between the state and its instrumentalities or, as in this case, the State Department of Education, and a school district existing by and through legislative authority and in accord with the fundamental responsibility of the Wyoming Constitution, Art. 7, §§ 1, 8, and 9.

> "The legislature shall provide for the establishment and maintenance of a complete and uniform system of public instruction, embracing free elementary schools of every needed kind and grade, a university with such technical and professional departments as the public good may require and the means of the state allow, and such other institutions as may be necessary." Article 7, § 1, Wyoming Constitution.

> "Provision shall be made by general law for the equitable distribution of such income among the several counties according to the number of children of school age in each; which several counties shall in like manner distribute the proportion of said fund by them received respectively to the several school districts embraced therein. But no appropriation shall be made from said fund to any district for the year in which a school has not been maintained for at least three months; nor shall any portion of any public school fund ever be used to support or assist any private school, or any school, academy, seminary, college or other institution of learning controlled by any church or sectarian organization or religious denomination whatsoever." Article 7, § 8, Wyoming Constitution.

> "The legislature shall make such further provision by taxation or otherwise, as with the income arising from the general school fund will create and maintain a thorough and efficient system of public schools, adequate to the proper instruction of all youth of the state, between the ages of six and twenty-one years, free of charge; and in view of such provision so made, the legislature shall require that every child of sufficient physical and mental ability shall attend a public school during the period between six and eighteen years for a time equivalent to three years, unless educated by other means." Article 7, § 9, Wyoming Constitution.

The State's argument apparently is that the school district, as a constitutionally implemented instrumentality of the state, can assert legislative invalidity by declaratory judgment, but cannot claim unpaid amounts withheld by other public officials. Noteworthy in pursuing the argument is that the administrative appeal process is not similarly constrained. See *City of Evanston v. Griffith*, supra, and particularly n. 3, 715 P.2d at 1383. This court is asked to determine that the administrative appeal avoids the impedance but declaratory judgment will not. See Rule 12.12, W.R.A.P.:

> "The relief, review, or redress available in suits for injunction against agency action or enforcement thereof, in actions for recovery of money, in actions for a declaratory judgment of rights, status, or legal relations based on administrative action or inaction, in actions for mandamus to compel administrative action, and in applications for writs of certiorari and prohibition to review or prevent administrative action shall be available by independent action notwithstanding any petition for review filed."

The certification appeal under Rule 12.-09, W.R.A.P. does not remove the converse rights or the corollary rights of Rule 12.12.

See *City of Evanston v. Griffith,* supra, 715 P.2d at 1383, n. 2:

> "It was proper for the City to file for these forms of relief from agency inaction under Rule 12.12, W.R.A.P., which states:
>
> " 'The relief, review, or redress available * * * in actions for a declaratory judgment of rights, status, or legal relations based on administrative action or inaction, in actions for mandamus to compel administrative action * * * shall be available by independent action notwithstanding any petition for review filed.' "

█ This court, in the context of the rule where the right is clearly indicated, and of the Declaratory Judgments Act which provides no sovereign immunity restriction for action by governmental agencies, will not apply a sovereign immunity restriction to the determination of rights *or the award of appropriate relief between segments of the Wyoming government.* See *Washakie County School District No. One v. Herschler,* supra, 606 P.2d 310.[1]

█ Although we could find in *Rocky Mountain Oil & Gas Association v. State,* Wyo., 645 P.2d 1163 (1982), appropriate authority to permit summary judgment in the context of its proceedings, as did the trial court, we will determine the case on the basis that sovereign immunity as a doctrine in Wyoming does not apply to proceedings between segments of state government wherein declaratory judgment or adminis-

trative appeal provisions are available to determine respective rights and liabilities under constitutional provisions and statutory enactments.

That remedial financial obligation or recovery can generally be determined and enforced in either the administrative appeal or declaratory judgment proceedings, is not really an issue of present justiciable dispute. *City of Evanston v. Griffith,* supra; *United States Fidelity & Guaranty Co. v. Sidwell,* 525 F.2d 472 (10th Cir.1975). This is the supplementary relief provided in § 1–37–110, W.S.1977. See also Federal Declaratory Judgment, 28 U.S.C. § 2201; *Beacon Construction Co., Inc. v. Matco Electric Co., Inc.,* 521 F.2d 392 (2d Cir. 1975); *Maryland Casualty Co. v. Boyle Construction Co.,* 123 F.2d 558 (4th Cir. 1941); *Beatty v. Chicago B. & Q.R. Co.,* 49 Wyo. 22, 52 P.2d 404 (1935); Uniform Laws Annot., Declaratory Judgment Act, § 8, p. 501.

## III

## CONSTITUTIONALITY OF THE FUNDS REDUCTION PROVISION

The substantive issue is the constitutionality of the process mandated by the questioned statute which withholds earned funds under the state school finance system if a county elected official, the county assessor, and the state appointed officials,

---

1. It does seem that the State is now attempting to walk away from a committed position in the trial court, as evidenced by the stipulation:

 "1. This action is brought pursuant to the Wyoming Uniform Declaratory Judgments Act, W.S. 1–37–101 et seq., for the purpose of determining whether the penalty provision found in W.S. 21–13–310(c) of the school finance laws is constitutional.

 "2. Plaintiff is an interested party pursuant to W.S. 1–37–103 by reason of having suffered pecuniary losses as a direct result of operation of the challenged statute, W.S. 21–13–310(c).

 "3. A justiciable controversy exists between the parties because of the pecuniary losses suffered by Plaintiffs, because a declaration of the Court concerning the validity or invalidity of the statute in question will effectively settle the controversy surrounding application of that statute in 1985 and future years, be-

cause all parties are subject to the jurisdiction of the Court for this purpose, and because all parties take genuinely adversarial positions.

"4. Jurisdiction of the Court is founded on Article 1, Section 8, and Article 5, Section 10 of the Wyoming Constitution, and W.S. 1–37–101, et seq., the Uniform Declaratory Judgments Act,"

and in additional stipulation:

"3. In the event that Plaintiffs should prevail and the Court determine that W.S. 21–13–310(c) is either unconstitutional or void as a matter of public policy and award Plaintiffs judgment for the amounts claimed, there are sufficient funds appropriated to pay the District the Foundation Fund monies and the Capital Construction Funds. Furthermore, the Department of Education agrees to encumber the funds before the end of the fiscal year."

the State Board of Equalization, fail to achieve a constitutionally and statutorily mandated tax equalization.

Appellant speaks of a state subsidy to the local school district. This conception fails to recognize the primary state responsibility for equalized educational funding which, under the separation of powers, is the *legislative responsibility to provide, the executive branch to administer, and the judicial branch to require.*

"Educating the youth of our state is an important function performed by our state government. Our constitution, as we shall see, plainly expresses the commitment of a free people to the value of a thorough education. The school districts and the members of school boards are charged with the responsibility of providing education to the children of Wyoming and are tangibly injured if the statutes which guide their hands disenable them from so providing. Parents are keenly concerned and suffer tangible injury if their children do not receive a proper education. The children themselves are, obviously, tangibly injured if they do not uniformly receive the best education that tax resources can provide." *Washakie County School District No. One v. Herschler, supra,* 606 P.2d at 317.

See also, *Johnson v. Schrader,* Wyo., 507 P.2d 814 (1973); and *Sweetwater County Planning Committee v. Hinkle,* Wyo., 491 P.2d 1234 (1971).

 As we said in *Washakie County School District No. One v. Herschler,* supra, 606 P.2d at 332, the right to an education cannot constitutionally be conditioned on wealth in that such a measure does not afford equal protection. This court would now also add as impermissible to withhold funds because of the inability by the State Board of Equalization and the county assessor to equalize local assessments. This is equality denied in withholding state resources as justified by insufficiency of state legislation or the inaction or

improvidence of other state officials in enforcing existing legislation. (Whichever or either, is not addressed by present briefing in this case.) Education is a fundamental interest in Wyoming:

"When a fundamental interest is affected or if a classification is inherently suspect, then the classification must be subjected to strict scrutiny to determine if it is necessary to achieve a compelling state interest. In addition, this test requires that the state establish that there is no less onerous alternative by which its objective may be achieved." 606 P.2d at 333.[2]

In addressing this constitutional issue of withholding funds otherwise required to provide reasoned equality because the state through the Board of Equalization and the county by the elected County Assessor have under-assessed, we are persuaded in decision by Art. 7, §§ 1 and 9, the other sections of Art. 7 as the educational provision of the Wyoming Constitution, and additionally by Art. 15, §§ 9, 10, and 11, Wyoming Constitution:

"The legislature shall provide by law for a state board of equalization." Article 15, § 9, Wyoming Constitution.

"The duties of the state board shall be as follows: To fix a valuation each year for the assessment of live stock and to notify the several county boards of equalization of the rate so fixed at least ten (10) days before the day fixed for beginning assessments; to assess at their actual value the franchises, roadway, roadbed, rails and rolling stock and all other property, used in the operation of all railroads and other common carriers, except machine shops, rolling mills and hotels in this state; such assessed valuation shall be apportioned to the counties in which said roads and common carriers are located, as a basis for taxation of such property; provided, that the assessment so made shall not apply to incorporated towns and cities. Said board shall also

2. Following the opinion in *Washakie County School District No. One v. Herschler,* supra, in 1980, State Superintendent of Public Instruction Lynn Simons appointed a blue ribbon committee to consider education and educational excellence. In addition, interim committees of the state legislature extensively addressed the subject.

have power to equalize the valuation on all property in the several counties for the state revenue and such other duties as may be prescribed by law." Article 15, § 10, Wyoming Constitution.

"All property, except as in this constitution otherwise provided, shall be uniformly assessed for taxation, and the legislature shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal." Article 15, § 11, Wyoming Constitution.

Singularly, also, Art. 1, §§ 23 and 28, and Art. 3, § 27, Wyoming Constitution:

"The right of the citizens to opportunities for education should have practical recognition. The legislature shall suitably encourage means and agencies calculated to advance the sciences and liberal arts." Article 1, § 23, Wyoming Constitution.

"No tax shall be imposed without the consent of the people or their authorized representatives. All taxation shall be equal and uniform." Article 1, § 28, Wyoming Constitution.

"The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: For * * * regulating county or township affairs; * * * for limitation of civil actions; * * * providing for the management of common schools; * * * remitting fines, penalties or forfeitures; * * * for the assessment or collection of taxes; * * * exempting property from taxation; * *. In all other cases where a general law can be made applicable no special law shall be enacted." Article 3, § 27, Wyoming Constitution.

It is the responsibility of this court to apply the strict-scrutiny criteria enunciated for educational funding in *Washakie County School District No. One v. Herschler*, supra, to question any system that withholds funds because of transgressions of other segments of government.

We again find that the experienced trial judge comprehensively and cogently analyzed the improvident and constitutionally impermissible penalty provision.

"Finally, the Court has the issue presented of the constitutionality of W.S. § 21–13–310(c). When a statute is assailed on grounds of constitutionality, the court presumes the statue to be constitutional and must resolve any doubts in favor of constitutionality. A party who seeks to deny the constitutionality of a statute assumes a heavy burden. *Galesburg Construction Co. v. Board of Trustees*, 641 P.2d 745, (Wyo.1982); *Meyer v. Kendig*, 641 P.2d 1235, (Wyo.1982); *Mountain Fuel Supply Co. v. Emerson*, 578 P.2d 1351, (Wyo.1978); *Washakie County School District No. 1 v. Herschler*, 606 P.2d 310, (Wyo.1980); *Nicholson [Nickelson] v. People*, 607 P.2d 904, (Wyo.1980); *Sorensen [Sorenson] v. State*, 604 P.2d 1031, (Wyo.1979). This Court has approached the problem in this case with those precedents in view.

"In the case under consideration, the Plaintiffs contend that W.S. § 21–13–310(c) is a special law proscribed by the Wyoming Constitution, specifically Article 3, Section 27. This statute provided, at times material to the issues here presented, as follows:

"(c) [Quoted supra in this opinion.]

"The last two sentences of the statute quoted above were repealed by the provisions of Chapter 146, Session Laws of Wyoming 1985, effective July 1, 1985. It is these two sentences, repealed a year after they had been adopted in the 1984 session laws, that caused the controversy now before the Court.

"Article 3, Section 27 of the Wyoming Constitution provides as follows:

" 'The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: For ... regulating county or township affairs; ... for the assessment or collection of taxes ...'

"The Wyoming Supreme Court has said that the test for determining when a statute constitutes an improper 'local or special' law under the last quoted constitutional provision, was whether the classification contained in the statute was reasonable and whether the statute oper-

ated alike upon all person or property in like or the same circumstances and conditions. *Mountain Fuel Supply Company v. Emerson,* 578 P.2d 1351, (Wyo. 1978). And see, also, *Phillips v. ABC Builders, Inc.,* 611 P.2d 821 (Wyo.1980). "In the instant case, the Defendants argue that 'this measure was clearly designed also to force County Assessors to do their jobs in order to avoid the threatened reduction in school funding.' (Defendants' Brief p. 12–13). It appears to me, however, that the Defendants' position becomes untenable, in so arguing, when we review the purpose behind the total revision of Chapter 13, on school finance, as had been mandated by *Washakie County School District No. 1,* supra, and the specific provisions regarding County Assessors in Titles 18 and 39, Wyoming Statutes.

"When the legislature, in 1983, enacted Chapter 36, they recited that they were doing so pursuant to the mandate of the Washakie County School District No. 1 case in an attempt to provide a complete, uniform system of public school funding and that they were committed to reducing the disparity in funding education among school districts. However, if the act is argued as being a means 'to force County Assessors to do their jobs', the provision at issue obviously failed in that seven school districts, including the Plaintiffs here, were penalized by a reduction of their foundation funds and five of the eight recapture districts were penalized by a reduction in their recapture payments. (See Joint Stipulation). "There are already statutory provisions to force County Assessors to do their job. See W.S. § 18–3–306, which provides criminal penalties for failing to perform the duties of a County Assessor, or for knowingly and willfully valuing or equalizing property at other than its fair value. In addition, § 18–3–204(a), provides for a review of assessments by the County Board of Equalization; § 18–3–906 provides that a County Assessor is guilty of malfeasance where he fails to carry out directives and orders of the State Board of Equalization relative to assess-

ment of property; and § 39–1–304 authorizes the State Board of Equalization to examine and compare the returns of the assessment of property in the several counties and to increase or decrease assessments returned by the county boards when the property appears to be overvalued or under-valued.

"In other words, the legislative act is being argued by Defendants as being an attempt to equalize the funding of education among the various school districts by punishing a school district when the County Assessor of the county in which the school district is located fails to comply with the laws as to assessment and equalization of property for tax purposes. Stated differently, the act is an attempt to require school districts to police the responsibilities of their County Assessor or to bear the consequences of the assessor's errors. Such legislation is, on its face, arbitrary and without any just relationship to the allocation of school foundation funds and capital funds.

"In addition to the Court's finding that the classification is arbitrary as stated in the preceding paragraphs, the provision also remains, and must be declared to be, unconstitutional because there is no reasonable classification, and therefore the law and its penalties are not equally applied to all funding districts in political subdivisions who receive funding within Laramie County based on the assessments by the County Assessor. Numerous other entities within Laramie County receive their funding based on the County Assessor's calculations, yet as stipulated, none of these are penalized by a reduction of funding for the assessor's errors except the Plaintiff School District."

We would now only add that two constitutional wrongs do not make one statute right.

## IV

## MOOTNESS

■ Finally, the State contends that the issue is moot since the offending statute

has been repealed. We could not favor that conclusion in the face of the stipulated retention of funds pending judicial resolution. In determining that the action in withholding the funds was improper, we accord full relief in affirming the trial court decision that the money should be paid to the district. *Beatty v. Chicago B. & Q. R. Co.*, supra, 52 P.2d 404; *City of Evanston v. Griffith*, supra, 715 P.2d 1381. Claims for unpaid money infrequently invoke mootness inquiry.

The judgment is affirmed.

BROWN, C.J., filed a special concurrence.

BROWN, Chief Justice, special concurrence.

A homeowner in Kemmerer pays $100 more in taxes per year than does a Cheyenne resident for a house of twice the value. Since the beginning of the school foundation program, the taxpayer in the provinces has subsidized the schools in the capital city.

I agree in theory with the subsidy scheme. Every student in Wyoming is entitled to a quality education even if he or she happens to live in a geographic area that generates low tax revenue compared to the number of students to be educated.

In *Washakie County School District Number One v. Herschler*, Wyo., 606 P.2d 310 (1980), we succinctly explained the taxation scheme under the school foundation program.

" * * * [W]here local resources are high in some cases, little or no foundation funds are paid by the State to the district. Schools that raise relatively large amounts of money through property taxation receive considerably less support, if any, from the Foundation Fund than those districts where a comparable levy raises a smaller amount of money. If a district's assessed valuation—its tax base—is relatively high, it is able to raise enough money to go beyond the foundation program, whereas another district with low assessed valuation cannot increase its revenues to such a level even by taking advantage of all available location taxes."

The property assessment authority in Laramie County and four other counties under assessed the property in their counties. In Laramie, the under assessment was 30.76 percent low for non-agricultural land. The effect of this under assessment was that the subsidy to Laramie County schools increased at the expense of counties that did not under assess property.

In 1983, the legislature enacted § 21–13–310(c), W.S.1977, in an effort to encourage Laramie County and four other counties to properly assess their property.

The statute had the effect of reducing (not eliminating) the subsidy to an under assessed district by the amount of tax revenues lost due to the under assessment. In applying the statute in this case, Laramie County School District No. 1 experienced a slight reduction in its subsidy.

The enactment of § 21–13–310(c), W.S. 1977, was designed to achieve just and equitable assessments, by providing an incentive for the assessment authority in the counties to properly assess county property. Unfortunately, the statute is unconstitutional as explained in this court's well reasoned opinion.

Some method should be devised to encourage or require the counties to properly assess their property. Otherwise, some counties will continue to under assess their property and put an additional tax burden on the counties who follow the law and properly assess their property.

I reluctantly agree with this court's opinion. However, I feel uncomfortable in concurring with an opinion that is to my financial advantage.